THE STATE OF FLORIDA, ex rel. J. W. GILLESPIE, L. F. RODGERS and JAMES G. MARTIN, *Relators*, v. DOYLE E. CARLTON, ERNEST AMOS and W. V. KNOTT, as and constituting the Board of Administration for the distribution of interest and sinking funds in connection with road and bridge bonds, and Ernest Amos, as Secretary of said Board, and W. V. Knott, as Ex Officio County Treasurer of Lake County, Florida, *Respondents*.

138 So. 612.

Division B.

Opinion filed December 9, 1931.

812

814

*Vocelle & Mitchell,* of Vero Beach, and *H. A. Lasseter,* of                    for Relators;

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant Attorney General, for Respondents.

*E. J. L'Engle* and *F. P. Fleming,* of Jacksonville, as amici curiae.

Davis, J.—This is a case of original jurisdiction in mandamus, the object of the proceeding being to require the Governor, Comptroller and State Treasurer, as and constituting the Board of Administration of the State of Florida, to convene and prepare, pass, adopt, approve and sign all necessary resolutions, papers, checks, warrants and vouchers requisite and necessary to the payment and disbursement of funds in the custody of the State Treasurer, as County Treasurer ex officio of Lake County, Florida, for the purpose of making payment to relators of certain bonds issued by Special Road and Bridge Districts numbers 8 and 9 and East Lake County Special Road and Bridge District in Lake County, and held by them, or so many of said bonds as the funds on hand available for that purpose will permit.

It appears from the alternative writ that relators are the owners, bearers and holders of certain described bonds of Special Road and Bridge District No. 8 of Lake County which were issued under authority of Chapter 11598, Acts of 1925, Extraordinary Session; that they hold certain other bonds issued by Special Road and Bridge District No. 9 of Lake County under Chapter 11597, Acts of 1925, Extraordinary Session, and that they own and hold certain bonds issued by East Lake County Special Road and

Bridge District for road purposes pursuant to an election authorized, held and carried out under the General Laws of the State pertaining to the issuance of special road district bonds. These last mentioned bonds were afterwards validated by Chapter 8722, Acts of 1921.

All the bonds hereinbefore mentioned appear to have been regularly issued and thereafter validated by appropriate judicial proceedings and, indeed, no question as to their validity is raised or suggested in this case.

It also appears that all the bonds in question matured and were payable under their terms prior to the bringing of this proceeding but that default has been made in such payment as to principal, in consequence of which the alternative writ of mandamus has been applied for to coerce the State Board of Administration and the Comptroller and State Treasurer to take the necessary steps to disburse such funds as they may have on hand to the credit of the several districts hereinbefore referred to, whether the funds on hand are sufficient to pay all the matured bonds of the several involved districts of Lake County, or not, it appearing that relators hold only a part of the total issue of bonds of the classes here under consideration.

Chapter 14486, Acts of 1929, created a State Board of Administration to be composed of the Governor, Comptroller and State Treasurer.

That act required all bond trustees and other officials charged by law with the administration of sinking funds of any county road bonds of any special road and bridge district of this State, to pay over and transfer to the State Treasurer of the State of Florida, as County Treasurer Ex-officio, any and all securities and moneys which they might have in their possession or control as administrators of such sinking funds, said securities and moneys to be held by the County Treasurer Ex-officio for the use and benefit of the counties and special road and bridge districts concerned.

The Act also provided that the proceeds of all taxes collected for interest and sinking funds of county road bonds or of special road and bridge district bonds should be remitted and paid over to the State Treasurer as County Treasurer Ex-officio by the officers collecting the same, and that when paid over, such paid or remitted funds should be held by the Treasurer for the benefit of the counties and the special road and bridge districts of the counties, to be used solely for the payment of the principal and interest of the bonds for which the moneys were collected.

The moneys just mentioned, together with other moneys made available by the Legislature under other provisions of law, and paid over to the State Treasurer as County Treasurer Ex-officio, are required to be administered for the benefit of the several counties and the several special road and bridge district therein, as provided by law. These resources in the hands of the State Treasurer as County Treasurer Ex-officio constitute a fund which is required to be disbursed on orders of the State Board of Administration, subject to the provisions of Chapter 14486, *supra.*

These duties of the State Board of Administration as defined by statute are principally to apply the county and district funds under their control to the interest and sinking fund accounts of the several counties and districts of the State which have outstanding county road or road and bridge district bonds and to do so in such manner that all the available funds accruing to the credit of the several counties and districts shall be applied primarily to the payment of the principal and interest of the bonds of such counties and special road and bridge districts.

All expenditures of the Board of Administration, under the terms of Section 15 of the Act, must be made upon warrants drawn by the State Comptroller, as Secretary of the Board, upon the Treasurer, as County Treasurer Ex-officio. These warrants when drawn for the payment of county

or special road and bridge district bonds or interest are required to be made payable to the bank or trust company named as the paying agent, or to the specific place of payment, for the bonds or interest, and must be remitted to such bank or trust company ten days before the maturity or payment date of said bonds or interest.

All warrants so drawn are required, under the terms of the statute, to state on their face that the proceeds of the same are to be applied by the paying agent to the payment of certain specified bonds or interest therein described, giving the name of the County or Special Road and Bridge District by which the bonds were issued, the numbers, amounts and dates of maturity of the bonds and interest to be paid, together with instructions to said paying agent, bank or trust company to return to the Comptroller the designated bonds or interest coupons when the same are paid.

In this case, the relators ask that the respondent, Ernest Amos, as Comptroller and as Secretary of the State Board of Administration of the State of Florida, be required by a peremptory writ of mandamus, to draw instanter his warrants upon the respondent W. V. Knott, as County Treasurer Ex-officio of Lake County, Florida, for the payment of relators' bonds described in the alternative writ, said warrants when drawn, to be payable by said County Treasurer Ex-officio out of the sums in his possession, custody and control as such County Treasurer Ex-officio, appearing credited to the interest and sinking fund accounts of Special Road and Bridge Districts Nos. 8 and 9, and East Lake County Special Road and Bridge District, all in Lake County, Florida.

Relators further ask that if funds on hand are not sufficient to make payment of all relators' bonds described in the alternative writ, that then the warrants shall be drawn in payment of so many of said bonds as the funds on hand will permit. It is further prayed that the re-

spondents as members of the State Board of Administration be commanded to take such steps as may be required by law to have such warrants drawn and paid according to the commands of the writ when issued.

To the alternative writ of mandamus the respondents have filed their return. By this return such respondents aver that, because of insufficient funds, they have no warrant or authority to pay the relators' bonds referred to in the alternative writ, and suggest as a defense to its commands, that because of their lack of authority in the premises, that they ought not to be required to comply with the mandate sought.

Respondents further set up in their return that the bonds owned and held by the relators are only a part of the bonds of each of the districts that matured on July, 1931, and admit that said bonds were in default when the alternative writ was applied for, not only as to relators but to all others of the same class; that the bonds owned by all the other bond holders of the same issues of bonds were of equal dignity to those held by relators, and that such other bonds were also unpaid and in default, that the Board of Administration was without power or authority under the laws of the State of Florida to pay one bond holder in preference to the payment of another bond holder, when the holdings of each were of equal dignity and priority and the funds in the control of the Board available for payment of principal or interest were insufficient to pay all the claims of equal dignity; that while it was true that prior demand had been made by relators on the respondents for the payment of their particular bonds, as alleged in the alternative writ, it was also true that demands had been likewise made on the respondents by the holders of all the other bonds of the district in like status, for the payment of said several series of bonds which were all in default; that it had been the custom and practice of the State Board of Administration, in a case like this, to

apportion such funds as were in its custody to the credit of a particular district, first, in payment of the interest on the outstanding obligations of such district, as such interest became due and payable, and second, if funds remained on hand sufficient for that purpose, to the payment of the principal of the bonds of such district, as such principal matured and became payable.

It was further set up that in the event the funds in the hands of the Board were insufficient to pay the total maturity of any bond issue of a county or district, then it was the policy of the Board to distribute such funds as were available among the holders of the bonds maturing, upon surrender of such bonds, with no preference to one bond holder over another, and to continue to distribute such funds as should come into the custody of said Board upon the same basis, until all the bonds were paid, or until some arrangement had been made with all the bond-holders which was satisfactory to all; that the funds which had been received by the State Board of Administration from the Tax Collector of Lake County as proceeds of taxes levied in such county for bond purposes, as well as the proceeds from other sources provided by law, had been remitted to the credit of the Road and Bridge Districts concerned, with reference to the total indebtedness of such district, but without apportionment in respect to particular issues of bonds, and that it was impossible for the Board to make such an apportionment to each particular issue of bonds, even if it wished to do so, because of the Board's lack of information upon which to make such an apportionment.

In consequence of the foregoing facts set up in the return, the respondents, while admitting the allegations of the alternative writ to the effect that there was on hand in the custody of the Board of Administration to the credit of the several Special Road and Bridge Districts mentioned, substantially the amounts of money mentioned in the al-

ternative writ, denied that such sums as they had in hand were available for the payment of relators' bonds, and averred that on the contrary, such funds were held by the Board of Administration in trust for the payment, without favor or preference, of all outstanding indebtedness of the several districts involved.

The cause is now before the Court for determination on relators' motion for a peremptory writ, the respondents' return to the contrary notwithstanding, and it is the legal question presented by the motion for a peremptory writ with which we must presently deal.

It is conceded by the Relators that payment of their bonds has not been refused by the Board because of its desire not to pay them for no good cause. On the contrary, it affirmatively appears that the Board has not made payment in this instance because of its adopted policy to the effect that when there are insufficient funds to the credit of any particular district to pay all matured demands against such district, that the Board will refuse to accept the responsibility of preferring and paying one bond holder of a series of bonds to the exclusion of another one equally entitled to be paid out of the funds in hand. It is admitted by the Board that it is a mere fiscal agent for the several counties and special road and bridge districts of the state having bonds outstanding, and that it exists and exercises its functions solely for the purpose of administering whatever funds may come under its control for the purpose of applying them to the principal and interest of outstanding county or road and bridge district bonds.

But, relators contend, the demonstrated inability of the State Board of Administration to pay all the bonds of equal dignity in the series to which relators' bonds belong, does not in law constitute a good defense to the issuance of a peremptory writ of mandamus to require such Board to pay relators what it can out of the funds in hand, even though by so doing, it may render itself unable to pay

other bond holders of the same series who hold obligations of equal dignity to those held by the relators.

To state it another way, the proposition insisted on is, that since there is, theoretically an inexhaustible source of taxation pledged to pay all the bonds, and thereby the Board has the means at its command to ultimately pay all of them, that funds on hand, though insufficient to pay all the bonds now, should nevertheless be ordered disbursed to the first lawful claimant legally asserting his demand. This is on the theory that the writ of mandamus to require the payment over of that part of the whole fund in hand, is in the nature of an execution in favor of the litigating bond holder, and that the debtor against whom such writ may be directed, should not be permitted to raise the question of preference which is available to any one, is available only to the other bond holders having obligations of equal dignity.

To support relators' contentions in this respect, there appear to be many adjudicated cases which hold that the rule is, that when a fund has accrued in the hands of a debtor which is insufficient to pay all bonds payable out of such fund, that one bond holder of the series for which the raising of such fund was pledged when the bonds were issued, may have his bonds ordered paid in full from the funds in his debtor's hands, even though the fund at the time of bringing suit is not sufficient to pay all the outstanding bonds then matured, it appearing that the funds in hand are accruals from the exercise of an inexhaustible power of taxation, and that the whole fund required, of which the fund in hand is but a part, is replenishable by the further exercise of the inexhaustible taxing power, thereby enabling the debtor to ultimately pay all who may have claims against the fund as a whole. City of Galena vs. U. S. ex rel. Amy, 5 Wall. (U. S.) 705, 18 L. Ed. 560; City of New Orleans vs. U. S. ex rel. Stewart, 49 Fed. 40, (U. S. C. C. A. 5th Circuit) ; Meyer vs. Porter, 65 Cal. 67,

2 Pac. 884; Ward vs. Piper, 69 Kan. 773; 77 Pac. 699; Voorhies vs. City of Houston, 70 Tex. 331, 7 S. W. 679; U. S. ex rel. Dana vs. Village of Kent, (Cir. Ct. N. D. Ohio), 107 Fed. 190; City of Austin vs. Cahill, 99 Tex. 172, 88 S. W. 542; State ex rel. vs. City of New Orleans, 37 La. Ann. 13 (cited with approval in City of New Orleans vs. U. S. ex rel. supra); City of Williamsport vs. Commonwealth, 90 Penna. 498, 9 Norris, 498; Henrylyn Irrigation District vs. Thomas, 66 Colo. 300, 181 Pac. 980; Hook vs. German-American Bank, 136 N. Y. Supp. 1019.

The reason for the rule and the scope of its application, is perhaps best stated in the case of Voorhies vs. City of Houston, supra, where STAYTON, C.J., speaking for the Supreme Court of Texas on the subject, said (7 S. W. text 683):

"If there be a fund to which more than one creditor is compelled to look as the only source from which their claims can be paid, and this be insufficient to pay all in full, then it is manifestly just, one of the claims having a preference, that the fund should be distributed pro rata. When, however, there is a means 'arough which all the creditors may be paid in full, the reason for directing a pro rata payment does not exist, and that one creditor, by the exercise of a higher degree of diligence than exercised by another, may secure payment at an earlier day than does the other, furnishes no reason why such creditor, much less the debtor, should be heard to complain because a pro rata payment was not directed. As we have seen, the city has power to levy such taxes as are necessary to satisfy every debt legally made and undertaken, existing at the time the present constitution was adopted, and there can be no pretense of its want of ability to raise sufficient means to pay in full every debt of that character. The fact that there are some uncollected taxes does not give to other creditors not before the Court any right to a part of the particular fund to be realized from their collection, and especially so when it appears that the uncollected taxes were not levied for the benefit of any particular creditor, or class of creditors, but for credi-

tors generally who held parts of the bonded indebtedness of the city. If, however, other creditors could be heard to object to the payment in full of the claim of appellant out of the fund to be realized from the taxes now uncollected, the appellee cannot be heard to insist that the Court below ought not to have directed other than a pro rata payment to be made to the appellants.''

In Meyer vs. Porter, supra, it was held that the fact that there were other creditors interested in the fund, who have not demanded payment, is no answer to the petition of a creditor before the Court, who makes application for payment out of that fund, and in Meyer vs. Widber, 126 Cal. 252, 58 Pac. 532, it was held that plaintiff in a mandamus proceeding who brought his suit at a time when there was money to the credit of the account out of which he was payable, which money might have been applied in payment thereof, was entitled to a mandate against the treasurer who refused to pay plaintiff's claim on the ground that, prior to plaintiff's demand, other holders of bonds and coupons payable out of that fund, had made demand and had been refused.

Another statement of the same principle will be found in the case of Ward vs. Piper, supra, where the Supreme Court of Kansas in deciding a mandamus case brought to compel town officers to pay judgments on interest coupons, said:

"The contention that there are other creditors holding like claims, and that the plaintiff should not be given preference over them, is not good. They are not here demanding payment, nor asking that the funds which the plaintiff is seeking to obtain should be distributed equally with them. The defendants are not competent to speak for them, and it will be time enough to consider the rights of other creditors when they intervene or invoke the action of the court."

\* \* \* \* \* \* \* \* \*

"The plaintiff is entitled to a peremptory writ compelling the payment of his judgment out of the fund provided for the payment of interest on bonds *or so*

*much of the same as remains in the township treasury.*
This will be the judgment of the court, all the justices
concurring.'' (Emphasis ours).

With the foregoing statement of the law applicable to
cases of mandamus against public officers to compel the
disbursement of funds to petitioning bond holders out of
the available sources of payment provided by law and con-
tract for the satisfaction of the indebtedness they are at-
tempting to collect, this Court agrees. Not only is the
doctrine stated, amply supported by authority from Courts
all over the United States, but it has the approval of the
Supreme Court of the United States and of the Circuit
Court of Appeals of the Fifth Circuit, which is the Circuit
in which the State of Florida is located.

But we are likewise impressed with the view that the
rule of these cases is limited to the debtor and its legal
officers or representatives who are empowered to act for it,
and that the rule cannot be rightfully applied against the
State Board of Administration, created by Chapter 14486,
Acts of 1929, supra, to coerce by mandamus the distribution
of funds in the hands of that Board, except as such dis-
bursement may be authorized or required by the statute
itself under which such Board has its being and functions
as a fiscal agency.

That Board is not the debtor, nor its legal representative.
It is a state agency created by legislative authority for the
more efficient, convenient and orderly handling and ad-
ministration of funds which may come into its control for
application to outstanding county, or outstanding district,
road bonds.

Whatever duties it may be required to perform are those
fixed by the statute, and by the statute alone. No holder
of any bond has, or can have, any contractual right en-
forceable against such Board. The funds handled by this
Board, and made applicable by law to the payment of the
bonds falling within the scope of its duties, embrace not

only the funds which have been raised by taxation pursuant to the pledge of such power to support the bonds when issued, but also other funds provided by law in which the bond holders have, and can acquire under the constitution of this state, no contractual rights whatsoever as an enforceable source of payment.

Under Section 8 of Chapter 14486, it is distinctly provided that all such bonds "shall remain obligations of said counties or special road and bridge districts respectively, and each of said counties or districts shall be legally liable for the full amount of its bonds so issued by it outstanding, together with interest thereon until paid" and by section 20 of that Act it is expressly declared that "It is hereby expressly declared that it is not the purpose or intention of this Act to obligate the State of Florida, directly or indirectly or contingently, for the payment" of said bonds, "or that the State should assume the payment thereof" or that the holders of such bonds should have any rights "to enforce the appropriation of the moneys" provided for the Board under the Act.

By the terms of this Act, the contractual obligation of the bonds, being valid when made, inclusive of the stipulation for special tax rates to be levied by the indebted county or district, continues in force against the county or district, and the result is to require the Courts to pursue the same course and remedy in the enforcement of the bonds against the original debtor as if the 1929 Act had never been passed, if the means provided for by that Act fail to result in the realization of sufficient funds to satisfy the contractual obligations assumed. Louisiana vs. Pillsbury, 105 U. S. 278, 26 L. Ed. 1090; U. S. ex rel. Wolff vs. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Von Hoffman vs. Quincy, 4 Wall. 535, 18 L. Ed. 403; Murray vs. Charleston, 96 U. S. 436, 24 L. Ed. 760; Mobile vs. Watson, 116 U. S. 289, 29 L. Ed. 620; U. S. Const. Art 1, Sec. 10. This is true because the purpose of Chapter 14486, as

disclosed by its specific provisions, was in no sense to confer on the holders of bonds a substantially equivalent *obligation* against the State Board of Administration *in lieu of* the original contractual obligation which had been incurred by the county or district, but was ''for the benefit of the taxpayers and property owners of the state of Florida'' by providing a state guardianship over the administration of the fiscal affairs arising in connection with these bonds, and by supplementing funds to be used in connection therewith in which bond holders were to be vested with not the slightest interest, except as made available to them by the Board under the terms of the law.

The fund administered by the State Board of Administration for the benefit of the special road and bridge districts here involved is in no sense of the word an ''inexhaustible'' fund within the meaning of the legal fiction referred to in the authorities we have cited, because all of the funds handled by the Board may be entirely cut off by legislative action, and the Board itself abolished at any time the Legislature may see fit.

Such Board is therefore not the debtor of these bond holders now before the Court, nor can its right to defend be limited to interposing only those defenses which the debtor itself is permitted to urge in a proceeding of this kind.

Whatever contract rights the bond holders may have acquired against the special road and bridge districts whose bonds they hold, continue to exist and may be enforced according to the manner provided by laws existing in this State at the time such bonds were issued, if that be necessary for the relators to realize the payments to which they are entitled.

If anything less than this right were accorded to them, it would amount to an unconstitutional impairment of the obligation of their contract rights evidenced by and secured in the bonds to the holders thereof, and would be in

violation of the United States Constitution as well as of our own organic law on that subject. U. S. Const. Article 1, Section 10.

But insofar as the State Board of Administration is concerned, such Board is a mere fiscal agent, to which is required to be remitted certain funds for the purpose of its anticipating and providing for the payment of the principal and interest of county and of road and bridge district bonds of the classification specified in the statute.

That statute accords to said Board no powers of taxation nor is the Board permitted to do more under the law than administer the funds which may come into its hands, and disburse them according to statutory regulations.

Moneys derived by it and used to pay principal and interest of outstanding bonds operate, it is true, to discharge *pro tanto* the obligation of the county or district for whose credit the payments are made, but such payments are in no respect contracted or pledged to be made, nor intended to take the place of the contractual obligation to pay embraced in the bonds, which, under the terms of the statute, remains in force against the original debtor, and enforceable against it, until discharged according to law.

Insofar as bond holders of county or of road and bridge district bonds actually *realize* payment of their principal and interest under Chapter 14486, *supra,* they of course realize a substituted payment from an independent source, which by its acceptance from that source, is regarded in law as a voluntary acceptance by them, as payment from such alternative fund, of what they might of right have had and demanded against their debtors as the payments required to be raised by the exercise of the power of taxation pledged in support of their bonds.

Accordingly such alternative payment when made operates as a proportionate discharge of the indebtedness on which the payment is accepted, to the same extent as

if the payment were made directly by the debtor in accordance with the terms of the original contract.

But there is nothing in the statute which requires the Board to pay either the principal or the interest of bonds to the bond holders when such bond holders present them to the Board for payment.

The statutory duty imposed is to remit the funds *to the paying* agent *or to the place of payment* specified in the bonds, when the Board has the funds in hand available for that purpose. See Section 15, Chapter 14486.

When the funds in hand are insufficient for the purpose of paying all demands and requirements, there is no duty on the part of the Board to make a disbursement to the first bond holder who makes a demand, or to the first bond holder who brings a suit, because the fund which is being administered by the Board is not an "inexhaustible" fund insofar as the Board is concerned, since the Board has no power to replenish it, nor can such Board by its own prerogative raise additional funds to make up a deficit, nor can it directly exercise any power of taxation to bring about an increase in the moneys necessary to enable it to completely pay all the creditors asserting demands if the moneys accruing to it prove insufficient.

To all intents and purposes, the funds handled by the State Board of Administration constitute an additional, alternative supplemental and limited special fund provided for by law, to be administered in strict accordance with the statute. In this special fund no bond holder has the right to participate except as is, or may be, provided by the statute under which the Board functions.

Whatever rights may be asserted by mandamus against the Board, or against the Comptroller or County Treasurer Ex-officio under Chapter 14486, with regard to the disbursement of these statutory funds, must be founded on the statute, or on its necessary implications and intendments, and the duty, if any, which is subject to enforce-

ment by mandamus against the Board or its members, must be a statutory one.

If the Board has violated no statutory duty, but nevertheless is without funds to provide for the payment of the principal and interest of any of the bonds which come within the scope of the statute, and the holder of any such bonds fails to secure payment and is dissatisfied with the provisions of this statute set up for his payment, because he is unable to get under it sufficient funds from the Board to pay his demands, the legal remedy still remains to such bond holder on his contract, and may be asserted by him against the county or special road and bridge district in default, to the same extent as if the State Board of Administration had never been created.

But such bond holder has no rights enforceable against the Board except such as may be founded on the statute, and cannot be heard to say that a writ of mandamus should be issued to require the Board to perform a duty which is merely contractual and not statutory.

In the case at bar, no showing is made that the State Board of Administration is refusing to perform any duty which the statute under which it functions requires it to perform. Neither does it appear the Board is in such situation that, under the rule to which we have heretofore made reference, it is debarred from being heard to say in defense of this writ, that it should not be required to pay one bond holder in perference over another.

No showing is made that the Board is improperly disbursing to others any funds in which the relators have an interest entitling them to a mandate directing a different disposition. Nor does it appear that the Board is acting in an arbitrary or discriminatory manner to the prejudice of the statutory right of the relators to have the Board of Administration perform the statutory duties devolving upon it, in the manner provided by the statute,

without favoritism or unjust discrimination practiced by them in so doing.

From the allegations of the answer, it appears that the Board unhappily finds itself in a situation where it has some funds on hand which are applicable to the bonds of the relators, but which are not applicable exclusively to the bonds of the relators and which are insufficient to pay relators and other claimants not now before the Court.

In this situation it avers that it is administering what funds it has in hand in such way as to discharge, first, the accruing interest, and second, the principal of such bonds as have come to maturity, where possible. But if not possible because the funds in the hands of the Board are insufficient to pay the total maturity of any bond issue of a county or district, then the Board advances its right under the law to distribute such funds as are available among the holders of the bonds maturing, upon surrender of such bonds, with no preference to one bond holder over another.

The statute is silent as to what shall be done by the Board in a situation such as is here presented. It is plain, however, that what the Board is doing is in perfect harmony with the spirit, intent and purpose for which Chapter 14486, Acts of 1929, was enacted. It clearly cannot be said that what the Board avers it is doing is in violation of any express or implied provision of the legislative Act, which by the creation of a board,—a collective body composed of high state officers, suggests some measure of discretion on its part to deal with the practical administration of the law in cases where the statute gives no direction.

To warrant the issuance of a peremptory writ of mandamus against the State Board of Administration in this case, it is incumbent upon the relators to show that they have a clear, legal right to require said Board to draw the warrants and make the payments referred to in the mandatory part of their alternative writ. This command is that

the respondents be required to disburse the funds on hand to the credit of the road and bridge district bonds the relators hold, so far as they will go, without regard to the nonpayment of other bonds of the same issue and dignity which must go unprovided for as a consequence.

As has been pointed out, no such clear, legal duty exists on the part of the Board, which is not itself the debtor, nor the legal representative of the debtor insofar as *providing for* the payment of these bonds is concerned. On the contrary, the Board is the mere fiscal agent of the State appointed to handle such funds as the debtor may, through its own powers, provide to meet maturing obligations, and current interest on obligations not matured.

The remedy of relators on their contractual obligation, as distinguished from their statutory right of participation in an alternative fund which may be of equal benefit to them, is to invoke by appropriate procedure their legal rights against the defaulting road and bridge districts.

By such proceedings they have the right to require such road and bridge district to make provision for the payment of the relators' bonds, as it contracted to do when they were issued. Furthermore whatever contractual obligation inheres in the bonds which form the basis of this proceeding appears to have been created before the 1929 Act was ever passed, and nothing in that Act either added to such contractual obligation, nor detracted from nor impaired it in any way.

The return of the respondents squarely presents the point that no duty exists on the part of the Board to do the things sought to be commanded by the alternative writ and that no legal right exists on the part of the relators to require such things to be done. State v. Greer, 88 Fla. 249, 102 Sou. Rep. 739, 37 A. L. R. 1398. Such a defense must be sustained under the case we have just cited, and the return held sufficient to bar the relief sought.

If follows that the motion for the peremptory writ of

mandamus must be denied and the alternative writ quashed and the proceeding dismissed, and it is so ordered. See State ex rel. R. R. Riley v. Cawthon, State Superintendent, etc., 89 Fla. 299, 103 Sou. Rep. 628.

Alternative writ of mandamus quashed. Proceeding dismissed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., concurs in the opinion and judgment.

ELLIS AND BROWN, J.J., concur specially.

ELLIS, J., agrees to the conclusion based on the fact that the statute imposes no duty upon the Board to perform the act required.

BROWN, J., concurs in the views of Mr. Justice ELLIS.