STATE, *ex rel.* SUWANNEE RIVER BRIDGE COMPANY v. DAVID SHOLTZ, *et al,* as Board of Administration of the State of Florida, *et al.*

160 So. 872.

En Banc.

Opinion Filed April 15, 1935.

*Giles J. Patterson,* for Relator;

*Cary D. Landis,* Attorney General, *Robert J. Pleus,* Assistant, and *Hull, Landis & Whitehair,* for Respondents.

DAVIS, J.—Relator as holder of certain long defaulted bonds and interest coupons of Sumter County aggregating $41,430.00 is seeking to reach in the hands of the State Board of Administration certain moneys shown to be held by it for the account of Sumter County, which moneys it is alleged are within the disposing power of said State Board of Administration and hence applicable to being applied in discharge of relators claim.

Previous opinions heretofore filed in this cause have settled the law of the case up until the present time. See: State, *ex rel.* Suwannee River Bridge Co., v. Sholtz, 114 Fla. 135, 154 Sou. Rep. 871; State, *ex rel.* Suwannee River Bridge Co. v. Sholtz, 119 Fla. 460, 158 Sou. Rep. 812.

In ordinary legal proceedings for the collection of unpaid debt out of a presumptively solvent private debtor, the "first come, first served (paid)" rule is universally applied as between different and conflicting claims of creditors. It is normally given effect by allowing the plaintiff who first obtains a judgment to first satisfy it out of his debtor's assets in preference to the subjection of the debtor's assets to a judgment subsequent in point of time. So also in proceedings against a presumptively solvent public debtor, such

as a municipality, county or special taxing district, for the enforcement of an unpaid liquidated debt due to be paid by it out of a replenishable (inexhaustible) fund within its custody or control, the so-called "first come, first served (paid)" rule as between the conflicting claims of different creditors is given effect by allowing the plaintiff who first obtains and serves an execution in the form of an alternative writ of mandamus against some applicable fund in hand, to be first satisfied out of such fund in preference to the subjection of such fund to an alternate writ of mandamus served subsequently in point of time.

We thus see that the "first come, first served (paid)" rule so sharply condemned and earnestly deprecated in the argument of the learned Assistant Attorney General (who now urges us to restrict it as much as possible if not to entirely abandon said rule in cases involving public debtors) is nothing more than the application to conflicting mandamus levies (when employed in the nature of executions to collect moneys subject thereto) of a long standing generally adhered to rule of law that has been held applicable from time immemorial to all classes of collectible legal claims when asserted by conflicting creditors against the presumptively replenishable (inexhaustible) assets and funds of a solvent debtor, whether private or public.*

Therefore, so long as a debtor (whether such debtor be a private individual or corporation, or a city, town, county or district) is presumptively solvent, *i. e.,* possessed of re-

---

*Of course, if a debtor is *solvent,* funds to pay his debts are inexhaustible for that purpose, because the sufficiency of assets to meet liabilities implies the sufficiency of funds to discharge such liabilities. If this were not so, the debtor would have to be deemed insolvent, since solvency implies ability to meet and pay debts in their proper season.

plenishable (inexhaustible) resources or assets with which to ultimately pay all that is owed, on what fairer principle of distribution than "first come, first served (paid)" can the courts allow to be satisfied out of presently available funds or assets the conflicting claims of several creditors, whose rights when asserted in conflicting proceedings at law have always been held to be collectible in the order of their priority in point of time, that is to say, in the order or priority as determined by the time when the same first become enforceable by a legal process emanating from a court of law for that purpose?

Only in cases of a debtor's legally *adjudicated* insolvency, or where the fund out of which several claims must be paid has become by operation of law or force of circumstances a closed and irreplenishable fund, has any rule of *pro rata* satisfaction been announced or followed in the United States in dealing with the foregoing subject.

To enforce a *pro rata* apportionment rule in a case like the present would be to hold that the Legislature by the enactment of Chapter 14486, Acts 1929, had the constitutional power to convert Sumter County's existing pledge of its replenishable tax resources as security for the payment of its bonds into the pledge of an irreplenishable substitute tax resource of a different character and capable of being manipulated to the prejudice of the obligation of the bonds and coupons when whatever funds are on hand have proved inadequate to avoid defaults in payment of interest and principal when matured, and no reasonable probability of realizing payment without litigation appears to exist.

A return in a mandamus proceeding should be definite and certain in its allegations, and neither evasive nor inconclusive in its statements of grounds of defense. Traverses of alleged facts must be of material allegations and

not of mere matters of inducement, the failure to prove which would be of no avail as a legal defense even if such failure of proof occurred.

Thus to file a return merely denying the corporate character of the relator as a litigant in a mandamus case brought to have money paid it as the holder of bonds and coupons entitled to demand payment of same on presentation, is insufficient, since the mere presentation of relator's negotiable bonds and coupons would *per se* require the respondents to forthwith pay them to the bearer regardless of the corporate status of the holder presenting them.

We have heretofore recognized that so long as *ad valorem* tax moneys and other moneys remitted to the State Board of Administration have been, or are being, appropriated or applied by said Board toward accomplishment of the true purpose of Chapter 14486, Acts 1929, the administrative discretion of the State Board of Administration to appropriate, allocate or pay out such funds, cannot be controlled by mandamus, at least in the absence of some clear showing of arbitrary conduct, or some plain abuse of power. Such was our holding in State, *ex. rel.* Gillespie, v. Carlton, 103 Fla. 810, 138 Sou. Rep. 612; State, *ex rel.* Orrell, v. Johnson, 109 Fla. 263, 147 Sou. Rep. 254. We reaffirm and reiterate the holding of those cases in the present case.

That relator as the holder of long defaulted Sumter County bonds and coupons to the amount of $43,130.00 is entitled to employ the writ of mandamus as an execution to seize and apply to the satisfaction of its debt, any available county *ad valorem* tax moneys, or their equivalent, has already been declared to be the law of this case in an earlier opinion. So the proposition to be decided resolves itself into a determination of whether or not the amended returns of the respondents show such a complete disposal of the

moneys in controversy as will now preclude their being reached by mandamus in view of the particular manner and form in which such moneys are now being held for the account of Sumter County.

While the pleadings make it appear without doubt that at one time there was a lawful segregation and remittance to Sumter County's paying agent of said sum of $51,155.00 to discharge past due and unpaid coupons to be paid by such a remittance in accordance with Chapter 14486, Acts 1929, the other circumstances shown in connection with the handling of said fund make it likewise clearly appear that the original purpose of the remittance has been effectually defeated through a positive repudiation of its object at the instance of Sumter County officials who by their unjustifiable interference in the matter, have succeeded in impounding and withholding from any orderly disposition whatsoever, all of the accrued and available funds on hand, including said sum of $51,135.00.

The remittance in controversy, as shown by the pleadings, was made on February 20, 1933, to pay the following described Sumter County bond coupons, as described by the amended returns:

|  |  |  | Coupons | |
| Description | Dated | Due | No. | Amt. |
| --- | --- | --- | --- | --- |
| Sumter County Road Bonds, 1/1/20 | 7/1/32 | 25 | $16,250.00 |
| Road and Bridge Bonds___7/1/22 | 7/1/32 | 20 | 3,240.00 |
| Highway Bonds_____1/1/25 | 7/1/32 | 15 | 18,540.00 |
| Highway Bonds_____1/1/27 | 7/1/32 | 11 | 10,800.00 |
| Refunding Bonds_____1/1/30 | 7/1/32 | 5 | 2,325.00 |

Total _____$51,155.00

The alternative writ of mandamus issued in this case was not applied for until September 30, 1933, over a year

after the due dates of the coupons for the payment of which the remittance was made, and more than six months after the date of the forwarding of the remittance itself.

In neither of the amended returns of the respondents have they made it appear that on September 30, 1933, the date of the service of the alternative writ of mandamus in this case, the sum of $51,155.00 sought to be reached, was not, as charged in the alternative writ of mandamus (originally and as amended) an available and unappropriated tax fund of Sumter County then within the disposing power of the State Board of Administration. It is not shown that it has ever been duly credited to any interest or sinking fund account of Sumter County bonds, nor has it been paid out in satisfaction of the bonds or coupons for the payment for which it was remitted to Central Hanover National Bank & Trust Company. It clearly appears that a reasonable time for paying same out or otherwise definitely disposing of it had long since elapsed when the alternative writ of mandamus in this case was served.

Under such circumstances it cannot be held that the respondents, members of the State Board of Administration, nor the respondents, County Commissioners of Sumter County, are vested with the unlimited discretion to continue to hold for Sumter County's account in a state of suspended distribution, for an indefinite purpose, and for an indefinite period of time, the accumulated sum of $51,-155.00 which having been held for disbursement for a long period of time and being not otherwise finally appropriated to a lawful object by the State Board of Administration, such as to the county's interest or sinking fund account, or actually paid out to creditors within a fair and reasonable time, now constitutes a subjectable tax resource of the county capable of being seized on mandamus and applied

to the satisfaction of the defaulted bonds and interest coupons of relator as the litigant who has first invoked a judicial process in the nature of an execution against it for the purpose of realizing payment of what is his due.

None of the matters pleaded, or attempted to be set up in justification of respondents' refusal to comply with the alternative writ, appear to be legally sufficient for that purpose, so the demurrers to the amended returns are sustained.

TERRELL and BUFORD, J. J., concur.

ELLIS and BROWN, J. J., dissent.