STATE, *ex rel.* ELSTON BANK AND TRUST COMPANY, as Trustee, a corporation, v. DAVID SHOLTZ, J. M. LEE and W. V. KNOTT, as members of and constituting the Board of Administration of the State of Florida, and W. V KNOTT, as Treasurer *ex-officio* of Special Road and Bridge District No. 4, of Martin County, Florida.

165 So. 670.

Opinion Filed January 7, 1936.
Rehearing Denied February 8, 1936.

*Casey & Walton,* of Miami, and *William K. Whitfield,* of Tallahassee, for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Robert J. Pleus* and *James B. Watson,* Assistants, for Defendants in Error.

BUFORD, J.—The appeal in this case brings for review a judgment quashing and dismissing alternative writ of mandamus.

The record shows that the State Board of Administration holds securities resulting from investment of surplus moneys accumulating in the sinking fund under statutory authority. That $37,000.00 invested in those securities was of the sinking fund from which $5,000.00 of relator's bonds were entitled to be paid at maturity and that such bonds have matured. That by reason of the failure to collect sufficient moneys to replenish the fund after the accumulated surplus was invested in the securities there is not sufficient money on hand with which to pay off and discharge relator's $5,000.00 in bonds.

The purpose of the writ was to coerce the Respondents as holders of the trust fund to sell the above mentioned securities, thereby converting them into cash with which to meet the obligations due to be paid out of the sinking fund and thereupon to pay the relator's bonds now past due in the sum of $5,000.00.

The return shows (and the motion to quash admits) that the securities held by the Board of Administration consist of the class of bonds in which the surplus sinking fund involved could be lawfully invested and that the funds were so invested in good faith. That most of the bonds in which

the fund was so invested have now matured, but that no adequate provision has been made for the payment of the bonds and that all of the same now stand in default. That for the Board of Administration to be required to sell the bonds under existing conditions would result in a great sacrifice to the trust fund; that the bonds of the par value of $37,000.00 constituting this trust fund which it pledged not only for the payment of relator's $5,000.00 of bonds, but for the payment of other like bonds far in excess of the value of $37,000.00 could be sold under present conditions for not in excess of $7,500.00.

So the question for our determination, as stated by the plaintiff in error, is:

"When collections affected upon *ad valorem* taxes levied for the payment of outstanding bonds of a special road and bridge district, have been paid over to the original bond trustees, who have invested the same by purchasing securities which thereupon became a part of the sinking fund for the payment of such bonds, and the securities by reason of the Board of Administration Act, have been transmitted to the State Treasurer as District Treasurer *ex-officio* to be held as a part of such sinking fund under the jurisdiction and control of the Board of Administration, but there is not in the sinking fund sufficient cash to pay any one of the District's matured bonds, does a holder of the latter have the legal right, by mandamus, to compel the Board of Administration to obtain money for the sinking fund by selling such securities, and to then pay such bondholder's matured bonds with the money so obtained, notwithstanding the attempted defense that 'under the present distressed conditions the sale of any of said securities would be disastrous and result in loss to the sinking fund?"

Now, clearly, it is the duty of the statutory trustee to, as

soon as practicable, convert the securities in the trust fund into cash and to apply the proceeds to the payment of matured obligations due to be paid from that fund, but the determination of the manner and procedure by which this is to be accomplished is a matter involving the exercise of sound administrative discretion. In the exercise of this discretion it is the duty of the Trustee to determine whether the issuing units should be coerced to levy a tax to produce a fund with which to pay off and discharge the obligations represented by the securities or should sell them on the market regardless of the necessary sacrifice incident thereto.

The showing made by the record establishes the fact that other bondholders not parties to these proceedings have a vested interest in the trust fund and will have an interest in the proceeds to be derived from the securities held in that fund. As long as this condition exists, that is as long as it appears that others, known or unknown, have a vested interest in, or vested rights in, the trust fund, it would not be within the province of a law court exercising jurisdiction in mandamus to compel the Trustee to sacrifice a large portion of the fund, that one having a right in the fund may be paid in full. If the Board of Administration is not inclined to act in the premises the relator may proceed in a court of chancery where it may bring in all others like situated and there procure an adjudication of the rights of all interested parties and have the benefit of the process of that court accordingly.

Aside from this, the matter of granting a writ of mandamus is largely discretionary in the court of original jurisdiction.

It not appearing that the relators had the clear legal right to have the alleged legal duty performed or that it was the clear legal duty of the respondents to perform the alleged

legal duty sought to be coerced, the judgment should be affirmed.

It is so ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL and BROWN, J. J., concur.

DAVIS, J., concurs specially.

ELLIS, P. J., dissents.

DAVIS, J. (concurring specially).—I concur in the opinion in all particulars except the statement that the original investment of the sinking fund was lawful or proper. I regard that question as one not properly before the Court in this case.

ELLIS, P. J. (dissenting).—I am unable to agree with the majority of the members of the Court in the conclusion at which they have arrived.

It is difficult for me to understand how a person's right, as the holder and owner of certain bonds of the District, to have the matured bonds and coupons in his hands paid out of the money in a sinking fund raised by taxation for that purpose, may be defeated by the investment of the money by bond trustees, in securities of doubtful value. In other words, if the money which was once in the hands of the Trustees were still in their hands the relator Corporation would be entitled to its writ to compel the payment to it of a sufficient sum to pay and discharge the bonded obligation held by it.

If the relator were entitled to the writ to compel such payment, it was entitled to such payment on demand, but it is said that such right is defeated by the investment of the money of the sinking fund by the Trustees in securities of questionable value, so that the liquidation of such securities would entail a severe financial loss. Such seems to me to be the effect of the decision.

So far as the record discloses, the amount of the sinking fund in the hands of respondents in terms of its par value is greatly in excess of the amount necessary to discharge the relator's claim in full. The opinion asserts that other bondholders not parties to these proceedings have a vested interest in the trust fund so that if the securities in which the fund has been improvidently invested should be sacrificed the interests of such other bondholders would be affected adversely to them. But it can be said with equal propriety that where there is only enough money in the fund to pay him who first applies, the interests of others whose bonds have matured but who have been tardy in demanding payment will be adversely affected by the payment of all the money to the bondholder first applying.

Yet this Court is definitely committed to the doctrine of "first come, first served (paid)" in such cases. See State, *ex rel.* Suwannee River Bridge Co., v. Sholtz, 119 Fla. 701, 160 South. Rep. 872.

The doctrine that the fund in the hands of the bond trustees is a trust fund for the benefit of all bondholders where bonds have matured, and which doctrine is applied in this case, is inconsistent with the doctrine announced in the case above cited.

The holder of matured bonds, duly issued by a State subdivision or taxing unit, having the right to payment to him on demand of money collected by taxation for the payment of such bonds may not be defeated of his right by the improvident investment of the funds in securities which upon forced sale or quick liquidation may impair the integrity of the fund.

So I dissent from the conclusion reached in this case and am of the opinion that the judgment should be reversed.