## THE BOARD OF LIQUIDATORS OF THE CITY DEBTS *v.* MUNICIPALITY NUMBER ONE et al.

The act of May 4th, 1847, to provide for the payment of the debts of the municipalities of New Orleans, gave a certain destination to the sinking fund, by which vested rights were acquired that could not, under the art. 109 of the Constitution of the State, be divested by a subsequent act of the Legislature. The act of March 20th, 1850, providing for the liquidation of the city debt, gave a different destination to the sinking fund, and is, consequently, unconstitutional.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Benjamin* and *Micou*, for plaintiffs. *R. Preaux*, for defendants. The judgment of the court was pronounced by

EUSTIS, C. J. This case is before us on an appeal from the Third District Court of New Orleans.

On the 4th of May, 1847, an act was passed by the Legislature to provide for the payment of the debts of the municipalities of New Orleans. By this act the municipalities were prohibited from emitting bills of credit, promissory notes, or creating any debt or obligation of any kind beyond their respective revenues; their whole debt was to be funded, as is explained in the following sections. They contain the only portions of the act which it is material to advert to in the consideration of the case as it has been presented in argument.

"Sec. 3. Be it further enacted, &c. That each municipality of the city of New Orleans be, and is hereby authorized to fund all or any portion of its existing debt, or to borrow money for the purpose of paying its existing debt, and to that amount, by issuing bonds therefor, payable at a period not exceeding thirty years, and bearing interest not exceeding seven per cent per annum, payable semi-annually, which bonds shall not be disposed of at less than par.

"Sec. 4. Be it further enacted, &c. That to secure the redemption and punctual payment of all bonds so issued, on their maturity, as well as all other bonds·

of said municipalities now existing, and for the payment of which, provision has not been made by law, each of said municipalities shall annually, in the month of January, specially appropriate and set apart from the revenue arising from wharfage and the markets, a per centage upon the amount so funded, which would extinguish said amount at its maturity; and it shall not be lawful for the municipal council to proceed to any other business until such appropriation is made, which appropriation shall constitute a sinking fund, and be specially pledged for the payment of such bonds, and shall not be liable for any other or future obligations of the municipality to which said fund may belong ; nor shall such be liable to seizure for any debts other than those for the extinguishment of which it is established.

" Sec. 5. Be it further enacted, &c. That the sinking fund authorized by the next preceding section of this act to be established by the municipalities, shall be deposited in the Bank of Louisiana, and shall only be applied in the following manner: 1st. To the extinguishment of any of the bonds of that municipality for the payment of which the fund is established. 2d. In purchasing, before maturity any such obligations : in which case at least sixty day's notice shall be given, in one or more newspapers published in the city of New Orleans, of the amount of money in the sinking fund that can be applied to the payment of the debt; and those bonds which may be offered at the greatest discount, and which fall due within the shortest periods, shall be preferred, and shall be purchased by the money in said sinking fund.

" Sec. 6. Be it further enacted, &c. That it shall not be lawful to employ any money which may be borrowed under the third section of this act, otherwise than to extinguish the existing debts of the municipality; and all officers or persons whatsoever, participating, aiding or assisting in such improper appropriation, shall be deemed guilty of embezzlement, and each be subject to a fine not exceeding one thousand dollars, and imprisonment not exceeding one year.

" Sec. 7. Be it further enacted, &c. That it shall be the duty of the respective councils of the municipalities to carry into effect the provisions of this act, and of the treasurer thereof to deposit in the Bank of Louisiana annually, and as fast as received, the amount herein provided by the fourth section of this act; and the amount so deposited shall be placed to the credit of the sinking fund of the municipality depositing the same, and no portion thereof shall ever be drawn therefrom, except for the purpose aforesaid, and unless authorized by the council, and then only upon a check signed jointly by the treasurer and comptroller, and countersigned by the recorder of the municipality to which said fund belongs, and by the Mayor of the City of New Orleans."

The plaintiffs are the Board of Liquidators, acting under the authority of an act to provide for the liquidation of the city debt and the debts of the separate municipalities of the city of New Orleans, passed on the 20th of March, 1850. This act makes it the duty of the board appointed under it to take possession of the several sinking funds established by law in the respective municipalities ; to dispose of and realize the value of the assets of the sinking funds of each of the municipalities, and appropriate the proceeds thereof to the extinguishment of the principal and interest of the debts of the municipalities to which said sinking funds belong respectively ; and it is also provided, that the said sinking fund shall thereupon be and remain forever abolished. The plaintiffs, under this act, claim the right to take possession of the assets of the sinking fund of the First Municipality, consisting of money and evidences of debt to the amount and value of about one hundred and thirty-eight thousand dollars, which are in

deposit in the Bank of Louisiana, and they applied to the court of the Third District of New Orleans for process to enforce the delivery of the assets according to the prayer of their petition. The municipality, which was made a defendant, opposed the application of the plaintiffs and, among other matters, pleaded the unconstitutionality of that portion of the act of 1850, on which the allegations and prayer of the plaintiff's petition are founded. The district court gave judgment refusing to grant the process asked for, and the plaintiffs have appealed.

The argument has been principally confined to the constitutionality of that portion of the act of 1850, abolishing the sinking fund of the municipality, and transferring the custody of its assets from the Bank of Louisiana to the Board of Liquidators, to be disposed of as provided in the act.

We think it proper to observe, that we should not decide a case in the imperfect form in which this is presented to us, unless we were assured that the decision, at an early period, was a matter of urgent public interest and the respective parties had expressly, before us, waived all matters of exception.

It is stated that the district judge decided against the plaintiffs on the ground that the portion of the act of 1850, before recited, was in conflict with the 109th article of the Constitution of the State, which provides that no *ex post facto* law, nor any law impairing the obligation of contracts shall be passed, nor vested rights be divested, unless for purposes of public utility and for adequate compensation previously made. If this act impairs the obligation of a contract or takes away a vested right, it not only violates the Constitution of the State but the Constitution of the United States, according to the well established jurisprudence relating to that instrument.

The first inquiry is, whether the fund in the Bank of Louisiana is there deposited under a contract; if it is, the legislative power, having no right to impair the obligation of the contract, can have no control of the fund, and can give it no direction not warranted by the contract. In relation to this inquiry the facts must be first ascertained.

The plaintiffs' petition states the fund to be a deposit in the Bank of Louisiana; that it is the sinking fund of the municipality; and the evidence conclusively shows that it has been created under the act of 1847. Creditors of the municipality, to a large amount, surrendered the evidence of their debt, and received in lieu bonds of the municipality issued by virtue of that act, for the payment of which the fund stands pledged by virtue of the fourth section of the act of 1847.

The act of 1850 does not assume to affect the obligation to pay the debts; on the contrary, it provides for their payment; and the question turns on the validity of the legislation which attempts to defeat the security which has been acquired under the act of 1847, for the payment of the debt created under its sanction.

The power of the Legislature to enact this law, and of the municipality to contract under it, as long as the law itself was unrepealed, can hardly be drawn in question.

We have then parties able to contract, and that they did contract, and that the consideration of their bargain was in all respects lawful and adequate. The fund appropriated as a security for the performance of the contract on the part of the debtor was, under the act of the Legislature and in pursuance of the agreement, delivered to a third person agreed upon by the parties, thus bringing the case within the technical rules of the law of pledge. Code 3129. After this delivery by the deposit in the Bank of Louisiana, we do not understand the

municipality as retaining any other interest in this fund than the debtor retains in the thing given in pledge in an ordinary case of pledge. And this conclusion necessarily implies another, and that is that the creditor acquired a vested right in the object pledged, as much as in an ordinary case of pledge when the pledge has been completed by the forms of law and by the delivery of the thing pledged. Whether this fund is called a sinking fund or not, does not vary the rights of the parties thus acquired in relation to it; it is sufficient for the purposes of the present inquiry, that there has been a delivery in pledge under the law to constitute the privilege in favor of the creditor.

In whatever aspect we consider this case, the facts present a valid contract and a vested interest in the fund in deposit in the Bank of Louisiana. It follows, as a matter of course under our constitutional system, that it is not within the functions of the legislative power to impair the one or the other, and that any act of the Legislature having this purpose and effect is void and of no effect.

But it has been argued on behalf of the plaintiffs, that it is competent for the Legislature, as a matter of administration, to change the depository designated by the law and assented to by the creditors, and that, as the recipients and depositaries of the fund, they would hold it subject to its charges as the original depositary holds it.

It is a sufficient answer to this, that the depositary thus selected forms a substantive part of the contract, and offers guarantees which it would be contrary to good faith to impair, and which the Legislature and the municipality have no right to change by substituting depositaries of their own selection.

In relation to the right or power of the plaintiffs to hold this fund on deposit subject to the rights of the creditors, it seems to us only necessary to observe that such a right is in direct violation of the law under which they are appointed, which orders them to sell and realize the fund and appropriate the proceeds to the extinguishment of the debt of the municipality, without discriminating among the creditors. It is also in direct contradiction to the allegations of their own petition, which declares it to be their duty to take possession of the sinking funds of the municipalities, "to be administered and disposed of as said law directs."

This proposition of the plaintiffs is presented to our consideration in another form by their proffer, under a resolution of the board to that effect, to apply the assets of the municipal sinking funds to the payment of such obligations as said sinking funds were originally intended to pay. The answer to this is obvious, that they have no such authority under the law, and to entrust them with it is directly in contradiction with the express will of the Legislature, which makes it their duty to apply the funds otherwise. Had the Legislature taken the same view of this subject which we have adopted, *non constat*, that the plaintiffs would have been charged with the administration of the sinking funds of the municipalities, the present fund under consideration might have been considered as being in its proper place on deposit in the Bank of Louisiana.

The judgment of the district court is therefore affirmed, with costs.