STATE OF FLORIDA, *ex rel.* ROBERT W. ORRELL, *Relator,* v. ED. JOHNSON, *et al.,* as Bond Trustees of Ocean Shore

264

Improvement District, and DAVID SHOLTZ, as Governor, J. M. LEE as Comptroller and W. V. KNOTT, as State Treasurer, as and constituting the Board of Administration of Ocean Shore Improvement District, and W. V. KNOTT, as ex officio County Treasurer of Flagler and Volusia Counties, *Respondent.*

147 S. 254.

En Banc.

Opinion filed March 24, 1933.

*Paul W. Harvey* and *Waller & Pepper, for Relator;*

*Cary D. Landis, Attorney General, H. E. Carter, Assistant Attorney General, Francis P. Whitehair* and *Hull, Landis & Whitehair,* for Respondents.

DAVIS, C. J.—Chapter 12733, Acts of 1927, Special Laws of Florida, authorized the Trustees of Ocean Shore Improvement District* to issue interest bearing coupon certificates of indebtedness, which were ordained by the statute to have all the qualities of negotiable instruments under the law merchant, and which should be the unqualifiedly valid obligations of the district issuing the same. The purpose of the certificates, as recited in Section 3 of the Act, was to secure funds for the purposes of the district, in anticipation of the later issuance of certain permanent improvement bonds that have been provided for in earlier enacted statutes.

Section 4 of said Chapter 12733, *supra,* gave to the certificates of indebtedness, when issued and sold, all the ordinary attributes of short term bonds, by providing in express terms that the same should have "all the qualities of negotiable instruments under the law merchant and the same shall be the unqualified and valid obligations of said district as and when issued, delivered and fully paid for and

---

*Created by Chapter 10013, Special Acts of 1923, as amended by Chapter 10562, Special Acts of 1925, Chapter 10952, Special Acts of 1925, Chapter 12727, Special Acts of 1927, Chapter 12735, Acts of 1927, Chapter 14776, General Acts of 1931.

the full faith and credit of the said district shall be irrevocably pledged to the full and prompt payment of the interest thereon and the principal thereof in full, etc."

Chapter 14486, Acts of 1929, created and established a State Board of Administration, to consist of the Governor, Comptroller and State Treasurer, for the purpose of providing for the creation of a state depository of sinking funds and other moneys raised to pay the outstanding indebtedness of road and bridge districts in the State of Florida, and disbursing the funds coming into its hands. Chapter 14776, Acts of 1931, General Laws of Florida, created the same state officers into a special Board of Administration for the affairs of the Ocean Shore Improvement District in Flagler and Volusia Counties. Under each of said acts, the State Treasurer of the State of Florida, is made ex-officio county treasurer of the counties involved.

Section 19 of Chapter 14776, last mentioned, provides that all indebtedness and bonds authorized and outstanding on the part of Ocean Shore Improvement District, at the time of the passage and approval of that Act, shall participate in the distribution of all moneys accumulated and distributed under the provisions of Chapter 14486, Acts of 1929, the State Board of Administration Act. By Section 2, of Chapter 14776, *supra*, all certificates of indebtedness issued under authority of Chapter 12733, Acts of 1927, are in legal effect to be defined and held to be "bonds" for the purpose of each of the board of administration acts just referred to.

Relator in this case is the holder of Certificates of Indebtedness Nos. 1 and 2, of Ocean Shore Improvement District, issued unde Chapter 12733, Acts of 1927, as well as certificate of Indebtedness No. 3 of the same series of issued certificates. The aggregate of all of his certificates is $23,000.00 in principal. The command of the alternative

writ of mandamus is that Johnson and others, as Bond Trustees of Ocean Shore Improvement District, convene in due and regular meeting and direct the State Board of Administration, consisting of the Governor, Comptroller and State Treasurer, to pay out of the funds to the credit of the Ocean Shore Improvement District in the hands of the State Board of Administration, the amount due on relator's said Certificates of Indebtedness Nos, 1, 2 and 3. The writ further commands the respondent State Comptroller to draw his warrant upon the respondent State Treasurer as County Treasurer ex-officio of Flagler and Volusia counties, in payment of relator's certificates of indebtedness, with interest due thereon, and that all necessary resolutions, papers, checks, warrants and vouchers necessary for that purpose be executed and carried out by the respondents.

The return to the amended alternative writ of mandamus, as filed by the members of the State Board of Administration, shows that in the past the Board has received and disbursed a total of $296,954.86 in payment of bonded obligations of Ocean Shore Improvement District; that all interest coupons maturing prior to September 10, 1932, on bonds issued by Ocean Shore Improvement District have been paid, and that there is on hand to the credit of the district as of September 10, 1932. the sum of $37,582.50. which constitutes a mixed fund derived from gasoline taxes, ad valorem bond taxes and other sources of revenue provided to be turned over to the State Board of Administration to be used to discharge its duties as such.

The return filed by the respondents, Bond Trustese, is that there is no fund available and that there never has been any fund available with which to pay unpaid past due, outstanding certificates of indebtedness of the character held by the relator, and that respondents should not be compelled

to comply with the amended alternative writ because the certificates of indebtedness held by relator are payable out of special sources of revenue that have been expressly allocated to their retirement, and that the general revenues of the Ocean Shore Improvement District accruing to its credit in the hands of the State Board of Administration, are in no wise subject to being applied to pay off Certificates of Indebtedness issued under Chapter 12733, Acts of 1927.

The case is now before us on relator's motion for a peremptory writ, the returns to the contrary notwithstanding.

The pleadings of the respondents in substance show that the State Board of Administration now has on hand to the credit of Ocean Shore Improvement District the sum of $37,582.50 which is sufficient to pay relator's certificates, if such sum on hand is applicable thereto. The pleadings likewise show that there has been credited and disbursed by the Board of Administration in the past the aggregate sum of $296,954.86 in payment of the bonded indebtedness of the Ocean Shore Improvement District. The pleadings of neither of respondents show to what extent, if any, the relator's certificates have been allowed to participate in the moneys heretofore collected and distributed through the State Board of Administration for the purpose of paying the district's debts required to be paid in due course according to the statutes under which, the Board of Administration exists.

Chapter 14486, Acts of 1929, and Chapter 14776, Acts of 1931, both apply to the Ocean Shore Improvement District of Flagler and Volusia Counties, have the same object in view and contain almost the same language and terms. Such arts are accordingly *in pari materia* and must be interpreted and given effect together, and likewise construed. Amos v. Mathews, 99 Fla. 1, 126 Sou. Rep. 308; Curry v. Lehman,

55 Fla. 847, 47 Sou. Rep. 18; State *ex rel.* Loftin v. Mc-Millan, 55 Fla. 246, 45 Sou. Rep. 882.

In Section 12 of Chapter 14486, Acts of 1929, the purpose of creating the State Board of Administration is expressly declared to be "for administering the provisions of this Act and such money as is available by law" to be received and disbursed by the State Board of Administration. Section 11 of Chapter 14776, Acts of 1931, is of almost identical language and legal import. The purpose and intention of both the foregoing acts was to benefit the tax payers and property owners of the state. This result was to be brought about by rendering assistance to the various state agencies that had in part already performed state functions resting upon the commonwealth with reference to the building of highways through the appropriation of certain state moneys to aid in lifting the burden of debt incurred for state road purposes, that was found to be resting upon counties and districts of the state. An equally important object of these acts was also to protect the good faith and credit of the state, and its various subdivisions, by providing for the safe, just and economical administration of all public funds by insuring their employment for the purposes for which the same were raised by means of taxation.

The only clear, legal duty enforceable by mandamus against the State Board of Administration with reference to the manner of its distribution or application of available funds coming into its hands for the payment of obligations falling within the scope of its jurisdiction and duties, is the necessarily implied statutory duty to accord to all creditors who have a right to participate in the available funds, equal and non-discriminatory treatment in relation to other creditors holding claims of the same class and dignity. The duties and powers of the Board are statutory and are of a trust

character. The Board can be coerced by mandamus only to the extent of compelling it to carry out and execute the obvious intent and purpose of the statute in cases where it has been shown that it either fails or refuses so to do. State *ex rel.* Gillespie v. Carlton, Governor, 103 Fla. 810, 138 Sou. Rep. 612.

But the statutory powers and duties of the State Board of Administration, as well as those of the special Board of Administration of Ocean Shore Improvement District, must be performed and carried out in a reasonable and lawful manner and without illegal favoritism or unjust discrimination. It must deal alike with those equally entitled to participate in the benefits of its acts under the law. Discretion the two Boards undoubtedly have in determining how, when and where they shall act within their statutory powers. But the existence of a statutory duty to act impartially toward creditors is essentially implied from the purposes for which the Act was passed and these Boards brought into existence. And such duty to act fairly and impartially is a clear legal duty that may be enforced by mandamus, when such a proceeding is brought by a creditor to exact equal treatment with others of the same class, when such equal treatment has been denied. This holds true, whether the denial of equal treatment by the Board, as complained of in the proceeding, results from a misapprehension of law on the part of the Board as to its particular obligation to the complaining creditor (as in this case), or proceeds from deliberate neglect or design on its part.

In the case at bar the relator as the holder of certificates of indebtedness of Ocean Shore Improvement District, issued under Chapter 12733, Acts of 1927, is entitled to be treated as a bond holder of the Ocean Shore Improvement District with respect to the obligations held by him. The

obligations he holds are in legal contemplation simply short term floating bonds issued in anticipation of the issuance and the negotiation of permanent bonds. His certificates of indebtedness entitle him to be treated as having the status of a bond holder of the Ocean Shore Improvement District.

It is true without regard to the legal force of those sections of Chapter 14486 and Chapter 14776, *supra,* which expressly provide that all "indebtedness and bonds" shall participate in the distribution of any moneys accumulated and distributed under Chapter 14486 to creditors of the Ocean Shore Improvement District. The terms of Chapter 12733, Acts of 1927, under which the Certificates of Indebtedness were issued, in legal effect made the certificates at the time of their issuance, bonds of the District. Leonard v. Franklin, 84 Fla. 402, 93 Sou. Rep. 688.

We hold, therefore that relator, as holder of certificates of indebtedness issued to him under Chapter 12733, Acts of 1927, has been in the past, and is now, entitled to participate in the distribution of funds accumulated to the credit of and distributed by, the State Board of Administration under Chapter 14486, Acts of 1929; that he is entitled to participate in the funds on hand amounting to the sum of $37,582.50, but to such extent only as may be necessary to bring required payments of principal and interest on his certificates up to a parity with other bonds of the Ocean Shore Improvement District that have already had payments made on them for either principal or interest, provided the funds on hand are not ample and sufficient to enable the Board to pay the relator his certificates in full as matured obligations, without prejudice to the functioning of the Board with respect to its administration of the other financial affairs of the Ocean Shore Improvement District in such manner as to minimize

defaults, protect the public credit as far as possible with available funds, and deal fairly and impartially with all creditors of the Ocean Shore Improvement District without favoritism or unjust discrimination.

In cases where the funds on hand to the credit of a particular county, or road or bridge district having outstanding obligations, matured in part and to mature in future installments, are not sufficient to enable the State Board of Administration to pay matured obligations without producing defaults in interest on other obligations equally entitled to participate in the available funds, the Board has a discretion to so allocate and distribute the funds on hand and available, as will carry out a permissible policy adopted and followed for the purpose of minimizing defaults in the payment of interest on the debts of the district as a whole, so long as this policy is adhered to without favoritism or discrimination as between creditors equally entitled.

We therefore reject the contention made in this case that respondents are under a clear legal duty that should be coerced by mandamus to compel respondents to pay relator's certificates in full, merely because they have matured under the circumstances relied on as entitling them to payment out of available funds in the order of maturity. Relator may have such enforceable clear legal right to payment of his certificates in the order of their maturity when enforcing the several alternative means of special payment provided for in the act under which the certificates were floated. But as against the State Board of Administration, or against the Board of Administration of Ocean Shore Improvement District, no such clear legal right exists as is enforceable by mandamus against such Board under the circumstances.

Neither the State Board of Administration nor the special Board of Administration for Ocean Shore Improvement

District is the relator's debtor as to bonds or other obligations heretofore issued by the Ocean Shore Improvement District, nor is it the legal representatives of the debtor district. State *ex rel.* Gillespie v. Carlton, *supra.* These Boards are state agencies created for the more efficient, convenient and orderly handling and administration of certain trust funds committed to the State Board of Administration for application to the discharge of the principal and interest of outstanding county and district bonds and other debts falling within the scope of the duties imposed upon the state agency as a trustee for the state, the tax payers and the bond holders. So long as the state agency acts within the scope of the powers conferred upon it by law, and is performing its functions with impartiality and fairness to those for whose benefit it is required to act, the State Board of Administration is not amenable to a writ of mandamus to control the *manner* in which it is performing, or undertaking to perform its duties.

By looking to the State Board of Administration for relief and seeking to participate in the funds administered by it, bond holders and other creditors are to the extent they seek participation in funds handled by the Board, deemed to have accepted the terms and conditions of the statute under which the Board was created and functions. They are likewise deemed to have abandoned any right, if any they ever had, to object to the exercise of discretion on the part of the Board to so allocate and distribute all available funds as to minimize defaults, protect the public credit, reduce the burdens on tax payers, and deal fairly and impartially with creditors for the best interest of the state, the districts, and the beneficiaries of the funds to be distributed. This court of dealing with creditors is not an impairment of any contract right of such creditors, because if such creditors desire

to renounce their statutory right of participation in the funds administered by the State Board of Administration, they are accorded by law the privilege to do so by seeking in the courts their ordinary remedies at law for the realization of their contractual rights. The statute (Section 8, Chapter 14486) distinctly provided for this when it said that all bonds "shall remain obligations of said counties or special road and bridge districts respectively, and each of said counties or districts shall be legally liable for the full amount of its bonds so issued by it outstanding, together with interest thereon until paid."

What we mean to say in this regard is not that a novation in obligation is brought about by looking to the Board for payment, but that in so far as the holders of the stated public securities choose to look to the Board of Administration for participation in the funds credited to that Board for administrative purposes, they must accept the terms and conditions upon which the statute has provided that the administration and distribution of the funds shall be made by that Board. Security holders are not entitled to claim the right to participate in the funds of the Board and at the same time have a coercive remedy against the Board, such as mandamus, except to obtain compliance by the Board with the statute, or to secure impartial and non-discriminatory performance by the Board of its statutory duties.

The fact that the moneys handled by the Board may have become moneys belonging to the several counties and districts and have ceased to be moneys of the State after they have been credited to the account of the several counties and districts, does not destroy the character of the aggregate existing fund as a state trust fund, nor render such aggregate trust fund any the less subject to being dealt with

only as the law has authorized and provided with respect to its trust management.

It follows from what we have said that the relators are entitled to relief by mandamus to the extent necessary to enable them to obtain from the respondents non-discriminatory treatment as bond holders of Ocean Shore Improvement District with respect to a relator's legal right to participate in the past and present funds of the district that the Board of Administration has accumulated and administered, so as to place relator at this time on a parity with other participants in the fund who have in the past received payments on their obligations that have not been made to relator. But to any greater extent than this, relator is not entitled to relief by mandamus, and the writ sought to obtain such greater relief should be denied.

The motion for a peremptory writ of mandamus, being broader than the statutes and the pleadings authorize, is denied, but without prejudice to relator's right to amend the alternative writ in such manner as will not be inconsistent with the holding of this opinion, and thereafter to proceed further herein as he may be advised, such amendment to be made within thirty days from the date of the entry of this order.

Peremptory writ denied, with leave to amend alternative writ and have further proceedings.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.