State ex rel. Suwannee River Bridge Co. v. David Sholtz, J. M. Lee, and W. V. Knott, constituting Board of Administration, et al., and B. S. Branch, et al., constituting Board of County Commissioners of Sumter County.

154 So. 871.

En Banc.

Opinion Filed March 3, 1934.

*Giles J. Patterson,* for Relator;

*Cary D. Landis,* Attorney General, *H. E. Carter* and *Robert J. Pleus,* Assistants, *Hull, Landis & Whitehair* and *McCollum & Howell* (Bushnell), for Respondents.

DAVIS, C. J.—Pursuant to the laws of Florida, Sumter County issued certain bonds designated "Sumter County Highway Bonds." Both principal and interest were provided to be paid out of *ad valorem* taxes levied on the taxable property of that county. Thereafter the Legislature passed an Act creating a State Board of Administration composed of the Governor, Comptroller and State Treasurer. To this Board it was directed should be turned over for administrative purposes, all sums of money, securities, claims and proceeds from the collection of delinquent taxes received by the State Treasurer from Boards of Bond Trustees or Boards of County Commissioners of the respective counties or road districts of the State, as well as other *ad valorem* tax proceeds, required to be applied on county and district road bonds. See Chapter 14486, Acts of 1929.

Under Sections 14 and 16 of that Act the State Board of Administration was required annually, before the first day of June of each year, to carefully estimate the amount of moneys available for the next fiscal year from ordinary and special revenue sources set up by the Act. This was required so that if the moneys available to be applied by the State Board of Administration should not be found to be sufficient to provide for payment of the principal and interest of bonds turned over to the Board for purposes of fiscal management, an appropriate *ad valorem* tax levy for the fiscal year might be certified to the counties and districts by the Comptroller to be thereafter assessed locally in order to make up any deficit in revenues from State sources intended to be made primarily available by the terms of the enactment.

To minimize *ad valorem* taxation, certain special State gasoline tax revenues were designed to be raised and made available to the Board under another law. See Chapter 14575, Acts of 1929. But under Section 20 of that Act (Chapter 14486, *supra*), it was expressly enacted that insofar as these additional State gasoline tax revenues were concerned, the appropriations thereof were to be solely for the benefit of the taxpayers and property owners of the State, whose taxable properties would otherwise be required to be subjected to the spread of burdensome local *ad valorem* taxes to pay the outstanding county and district obligations brought under the State Board of Administration's jurisdiction for purposes of fiscal control.

Under Section 14 of Chapter 14486, Acts of 1929, the actual appropriation of the revenue resources accruing to the State Board of Administration for the purposes of the several issues of bonds required to be provided for by it in the course of its administration of the fiscal affairs of the several counties and districts whose bonds it was given

in charge, was contemplated to be done by the State Board of Administration in the course of its budgetary function of anticipating and "applying" moneys estimated to be available for it during the fiscal year. By this method each of the several counties and districts entitled to participation in, or to credit of a share in State revenues, under the terms of the State Board of Administration Act and cognate statutes, would in due course have the same administered for its benefit by the functioning of the Board. But prior to any such particular appropriation by the State Board of Administration to the bonds of the respective individual counties and districts all of its State-derived revenues must be held in separate funds by the State Treasurer to the credit of the Board. This is to enable the Board to perform its duty to allocate correctly and apply truly all of the available and anticipated revenues contemplated to be brought under its control to accomplish the purposes of the 1929 Act by which Act a radical change was intended to be made in the method of payment of outstanding county and road district bonds.

So the plan devised by these statutes for the payment of the road and bridge district·obligations covered by Chapter 14486, *supra,* involved first the making to the State Board of Administration of a State appropriation of certain gasoline revenues to be credited to the State Board of Administration as the State's fiscal supervisor. This appropriation was in turn to be "applied" by the State Board of Administration (that is, particularly allocated or reappropriated by it) to the several counties and districts which were found to be entitled to participate therein under the law. Only in the event the State appropriation should appear to be insufficient for the purpose of meeting principal and interest requirements in full, according to the "estimates" of the Board should any *ad valorem* tax at all be

levied in the several counties and districts. And to lay a basis for determining in advance whether or not any such *ad valorem* tax would be required to supplement the special revenues anticipated by the Board, the Board was required by law to budget its estimated resources and estimated requirements in such manner that there could be determined and certified to the several counties and districts of the State, what, if any, tax levy should be made to prevent defaults, and keep the integrity of the securities of the several counties and districts unimpaired as to interest, maturities and installments of sinking funds for principal requirements.

Since all *ad valorem* taxes levied by direction of the State Board of Administration, as well as the proceeds thereof after collection and remittance to it, must under the law represent the identical taxes which the bond contract in the first instance required the several counties and districts to levy and collect in order to discharge their bonded debts, and since the authority of law under which such *ad valorem* taxes must have been raised in the several counties and district was no other than a restricted exercise of the identical taxing power of the several counties and districts that had already been pledged in support of their road and bridge bonds, it necessarily follows that as to these particular revenues the State Board of Administration occupies the status of a mere disbursing trustee; against which an unpaid bondholder may become authorized to seek relief under identically the same principles that pertain to a suit for disbursement of an inexhaustible tax fund already in the hands of a disbursing authority for disbursement, but insufficient to pay all claims that are filed against it. State *ex rel.* DuPont Ball, Inc., v. Livingston, 104 Fla. 33, 139 Sou. Rep. 360; State *ex rel.* Buckwalter v. City of Lakeland, 112 Fla. 200, 150 Sou. Rep. 508; State *ex rel.* New

York Life Ins. Co..v. Curry, 104 Fla. 242, 139 Sou. Rep. 891; State *ex rel.* Rempsen v. Smith, 105 Fla. 368, 141 Sou. Rep. 318; State *ex rel.* Gillespie v. Carlton, 103 Fla. 810, 138 Sou. Rep. 612. See also the recent opinion in United States *ex rel.* Guaranty State Bank v. Okeechobee County, U. S. District Court, Southern District of Florida, opinion filed January 9, 1934 (Per Ritter, District Judge).

The writ of mandamus brought in this case alleges that the relator is the holder of thirty-three Highway Bonds issued by Sumter County, maturing July 1, 1933; fifty-four coupons for interest due on the same issue maturing January 1, 1933, and sixty-three coupons from bonds of that issue, maturing July 1, 1933; that relator is the holder of thirty-nine coupons from an issue of Sumter County Road Bonds, which coupons matured July 1, 1932; thirty-nine coupons which matured January 1, 1933, and forty-four coupons which matured July 1, 1933. Other coupons not necessary to be described in detail are likewise set up in the relator's pleadings and relied on as a basis for relief.

An amendment to the alternative writ discloses that no moneys have been disbursed under order of the State Board of Administration since August 20, 1932. Subsequent to this date it is shown, the Board has received from the proceeds of *ad valorem* taxes levied, collected and remitted to it by Sumter County, in excess of $5,000.00. No part of this, so the alternative writ avers, had been so dealt with as to put it out of control of the disbursing power of the State Board of Administration, at the time the alternative writ herein was served.

If in order to pay matured obligations, a writ of mandamus of the character being considered in this case had been sought by relator prior to the enactment of Chapter 14486, Acts of 1929, *supra,* against Sumter County officials, or Sumter County road bond trustees, to require disburse-

ment of an existing fund in their hands representing *ad valorem* taxes levied and collected pursuant to the terms of the relator's bonds and coupons (and the statutes under which they were issued), there would be little doubt of the right of relator to prevail against respondents under the "First come first served" rule which obtains in this jurisdiction with reference to such matters.

The holding of this Court in State *ex rel*. Gillespie v. Carlton, Governor, 103 Fla. 810, 138 Sou. Rep. 612, relied on by the State Board of Administration to defeat relator's demand for relief in this case, expressly recognizes the rule that where there is tax money in a fund which may be lawfully sequestered in satisfaction of a lawful claim against it, that relator in mandamus proceedings may, after establishing that he has a legally enforceable contractual right to coerce payment out of such fund, be entitled to relief by peremptory writ of mandamus to realize payment from such fund, unless respondents can show by their return that it is impossible for them to make a disbursement because the moneys are no longer within their jurisdiction or control to order paid out. Duval County v. Jacksonville, 36 Fla. 196, 18 Sou. Rep. 339, 29 L. R. A. 416.

It was also recognized in State *ex rel*. Gillespie v. Carlton, *supra,* that contractual rights of holders of county or district road bonds within the scope of Chapter 14486, Acts of 1929, heretofore cited, were not intended by that Act to be impaired or abrogated, but were to be left to be enforced according to the laws applicable at the time the bonds were issued, if necessary. See tenth headnote of that case.

In the case of State *ex rel*. Orrell v. Johnson, 109 Fla. 263, 147 Sou. Rep. 254, it was held that if creditors holding matured and unpaid bonds or coupons desired to renounce their statutory right of participation in the funds administered by the State Board of Administration, they are ac-

corded by law the privilege to do so by seeking in the courts their ordinary remedies at law for the realization of their contractual rights.

In State *ex rel.* State Savings Banks v. Special Road and Bridge District of Hardee County, 110 Fla. 463, 153 Sou. Rep. 909, it was held that rights enforceable by writ of mandamus against the State Board of Administration under Chapter 14486, Acts of 1929, when such Board is made a respondent to a mandamus writ, are dependent solely upon the statutes which, under the law, may be asserted and judicially enforced against the State Board with respect to such rights.

But in none of the cases just cited was involved a proposition analogous to that considered in this case.

Here the alternative writ of mandamus has only been applied for by the relators after their bonds and coupons have become and remained long in default; nor is the proceeding being prosecuted against the State Board of Administration alone as a party respondent. The predicate for the instant proceeding is the contractual right of the relator to have available tax funds collected for the purpose of paying its matured bonds and coupons, duly applied for that purpose, after it has become evident to relator that his statutory privileges accorded under Chapter 14486, Acts of 1929, have failed and will continue to fail to give him substantial relief, in consequence of which he comes into court only after having accorded the State Board of Administration reasonable time and opportunity to appropriately proceed under its statutory duties and powers, all of which relator affirmatively alleges the State Board of Administration has failed and neglected to do because of contrary directions received by the Board from Sumter County authorities with reference to the disbursement of the funds

on hand that have been collected and are available for discharging relator's claims.

We hold, therefore, that after ample and reasonable time and opportunity has been first duly accorded to the State Board of Administration to make some appropriate disbursement of *ad valorem* tax proceeds collected and remitted such Board to be used, together with other funds, for the purpose of paying the principal and interest of bonds and other obligations payable out of same under the direction of the State Board of Administration, as provided by the terms of Chapter 14486, Acts of 1929, and the State Board of Administration has failed or neglected within a reasonable time, to apply such tax collections and proceeds for the accomplishment of the purpose contemplated by the statutes under which the State Board of Administration exists and functions, that bondholders, having the right to have sequestered and applied to their particular bonds and coupons, the collections and proceeds of tax collections realized from *ad valorem* taxes levied and collected to pay their bonds and coupons and remitted to the State Board, may, after renouncing their statutory rights of future participation in the funds administered by the State Board, thereupon pursue against such tax proceeds and collections in the hands of the State Board of Administration, their ordinary remedy of mandamus inuring to them under their contract rights as bondholders.

The object of Chapter 14486, Acts of 1929, was to reduce *ad valorem* tax levies for bond purposes, by providing certain supplementary State derived revenues, which, together with *ad valorem* tax levies necessary to make up deficiencies in revenue requirements for such bonds, would be ample for the purpose of enabling the State Board of Administration to anticipate, provide against and obviate defaults

in payment when due, of either principal or interest on the bonds falling within the Board's jurisdiction.

The so-called "first come, first served" rule heretofore approved by this Court in mandamus cases brought to enforce the payment of public securities, is limited to that class of mandamus proceedings that may be brought to sequester and have applied, some available fund on hand, for the purpose of discharging a demand of relator that is already matured at the time the proceeding is instituted.

Such a proceeding contemplates the use of the writ of mandamus as process in the nature of an execution against the fund sought to be reached. It is therefore of necessity, limited entirely to such funds as may be already on hand when the writ is served. And it is, of necessity, further limited to such funds as may at that time be available and applicable to disbursement to relator by respondent, in accordance with the commands of the alternative writ, should respondent elect to make such disbursement as the predicate for a return of performance of the conditions of the alternative writ, in lieu of defense against it. State *ex rel.* DuPont Ball, Inc., v. Livingston, 104 Fla. 33, 139 Sou. Rep. 360; State *ex rel.* National Discount Corp. v. Livingston, 103 Fla. 841, 139 Sou. Rep. 364.

Under Chapter 14486, Acts of 1929, and supplementary and correlative statutes relating to the jurisdiction, functions, powers and duties of the State Board of Administration with reference to the specified bond issues to which its official guardianship extends, all proceeds of *ad valorem* taxes levied and collected are required by law to be remitted to the State Board of Administration to be thereafter, together with other trust funds, allocated and applied toward the payment of bonds and coupons as and when same become due and payable.

So long as such funds are being so dealt with as to likely accomplish the statutory object, which is payment in full at maturity, it is plain that the holders of bonds for which such *ad valorem* taxes have been collected and remitted to the State Board, are not injured and have no cause for complaint, and hence have no standing in a court of law to seek judicial interference with the judgment and discretion of the Board in the handling of the funds committed to its jurisdiction for disbursement in due course according to law.

But when the statutory purpose has failed, or when the statute is being departed from by the unreasonable and unjustified withholding of such *ad valorem* tax proceeds from appropriation and disbursements as the law contemplates, then the security holder, being injured by an affirmative breach of his contractual rights, has the right to resort to the enforcement of his obligations as written, and to reach and sequester applicable funds, notwithstanding such funds have passed under the jurisdiction and control of the State Board of Administration.

In this proceeding relator is asking for the sequestration and application of an existing fund, and is not making any attempt to reach moneys other than such as it could have reached by mandamus proceedings in the nature of an execution against the identical funds, if this proceeding had been brought before Chapter 14486, Acts of 1929, became a law. And in this proceeding, relator, by expressly limiting its demands to a disbursement solely out of the *ad valorem* tax proceeds collected for its bonds and remitted to the State Board by Sumter County, expressly disclaims any right to interfere with the discretionary powers of the State Board of Administration vested in that body concerning other funds.

There is no showing in this case that with respect to any

of the particular bonds or coupons here involved, relator has already been paid or accepted any part payment of its matured demands now sued on, out of a *pro rata* distribution of all disbursable funds on hand. Nor does it appear that with reference to the funds now sought to be reached, that relator has done any act by which it is barred from resorting to a proceeding of this character, predicated solely on its contracts, and designed to reach only the proceeds of local taxes raised for the payment of its matured obligations, and not otherwise already applied.

The holding in State *ex rel.* Gillespie v. Carlton, *supra,* is not to be interpreted as deciding that the State Board of Administration is wholly immune from mandamus processes of any kind. What was said in that case does not apply where the sole object of the writ is limited, as it is in this case, to those funds, and to those funds only, which, at the time of the institution of suit, are subject to being reached by mandamus in the nature of an execution against the counties or road districts, had the 1929 statute never become a law.

In this case the alternative writ of mandamus as amended under date of October 25, 1933, specifically alleges that there was on hand on the date this petition for mandamus was filed the sum of $114,646.19, which relator specifically alleges is still subject to the control and disposition of the State Board of Administration. In this sum it is specifically alleged that there is included moneys remitted to the Board representing *ad valorem* taxes in an amount exceeding the sum of $39,840.00. The latter amount is all that is essential to pay relator's bonds and coupons.

The writ of mandamus as amended must accordingly be held good and the demurrer and motion to quash same overruled.

Terrell, Brown and Buford, J. J., concur.