STATE, *ex rel.* HARRY C. DAVIS, *v.* STATE BOARD OF ADMINISTRATION, composed of David Sholtz, Governor, *et al.*, for the distribution of interest and sinking funds in connection with road and bridge bonds, and J. M. LEE, as Secretary, and W. V. KNOTT, as *ex officio* County Treasurer of Indian River County and Osceloa County.

156 So. 130.

Opinion Filed July 17, 1934.

*Shutts & Bowen* and *Charles A. Carroll,* for Relator;

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant, for Respondents.

DAVIS, C. J.—This is a case of original jurisdiction in mandamus which is now before the Court on the relator's motion for a peremptory writ, the return of respondents to the contrary notwithstanding.

The object of the proceeding is to require the respondent members of the Board of Administration of the State of Florida to perform the acts necessary to pay to the relator, a holder of matured bonds of a Special Road and Bridge District, his *pro rata* share of the funds which were in the Board's hands at the time of the service of the alternative writ, which had been raised by *ad valorem* taxes on the property of the District for the purpose of payment of principal and interest of its bonds, and which under the

Board of Administration Act had been required to be delivered to that Board. In this proceeding the relator does not seek to require respondents to pay over to him any of the moneys held to the credit of the District which were derived or acquired from the "additional" sources of revenue, such as gasoline taxes, etc.

It appears from the pleadings and the statutes affecting the matters herein mentioned, that Atlantic Gulf Special Road and Bridge District was created by Chapter 11127, Special Acts of Florida, 1925, in St. Lucie and Osceola Counties. By Chapter 10148, Acts of 1925, the part of St. Lucie County which embraced a portion of the District was included in the newly formed Indian River County so that the District now lies in Indian River and Osceola Counties.

By Section 4 of said Chapter 11127, a Board of Bond Trustees was created as a governing corporate body for the District. Section 8, *et seq.*, authorized the issuance of bonds of the District not to exceed one million dollars, and prescribed the manner and conditions of issuance thereof. In Section 14, it was stated "that the provisions of this Act shall constitute an irrepealable contract between said Board and the holders of any bonds and coupons issued pursuant to the provisions hereof. Any holder of any such bond or bonds, coupon or coupons, may either at law or in equity, by mandamus or other appropriate suit or action, enforce and compel the performance of any duty required by this Act of any officer or person mentioned herein relating to said bonds or collection, enforcement, or application of the taxes for the payment thereof."

In Section 15, it was provided that the Board should apply moneys raised from taxation or otherwise to the payment of interest on its bonds and to provide and set aside a sinking fund for the payment of said bonds, and at their ma-

turity to pay the principal thereof out of such sinking fund, and that "the sinking fund for payment of the principal of said bonds shall not be appropriated or used for any other purpose than for the payment of the principal of said bonds."

It was further provided in said Chapter 11127, that one of the three members of the Board of Bond Trustees should be the Treasurer of the District, and a specific provision was made with respect to the selection and use of a depository (Section 16), and it was provided that no warrant on the funds of the District should be drawn or issued except for a purpose authorized by that particular statute (Section 17).

The Act contained the usual provision for the Board of Bond Trustees to determine annually the amount necessary to be raised by taxes for the purposes of the District, and to communicate the same to the commissioners of the two counties, who were then and there directed to cause the levy of the tax to be made, and provision was made for the collection of such taxes, and the transfer of the proceeds thereof to the Treasurer of the Board of Bond Trustees, to be held by him and disbursed in the manner provided for in the Act (Section 20).

The Board of Administration was created by Chapter 14486, Acts of 1929, Extra Session. The nature and purpose of the Board of Administration and the provisions of the Act have received careful analysis by this Court on numerous occasions and we shall omit any detailed statement thereof at this time.

It is alleged in the alternative writ that pursuant to the provisions of Chapter 14486, Acts of 1929, the moneys in the District's sinking fund were paid over to the respondent State Treasurer as County Treasurer *ex officio* and that certain moneys had been added to such *ad valorem* funds

by allocation of moneys from additional sources, to-wit: excise gasoline tax and motor vehicle tax, and that the amount held by the Board of Administration from the various sources to the credit of the sinking fund of said District is $13,774.69; that relator's twenty thousand dollars of bonds is one-half of the defaulted outstanding bonds of such issue, and that interest had been paid on the bonds through the last six-month interest-payment date, and that it was the duty of the Board of Administration to pay the relator one-half of said funds so held by it, to-wit: $6,887.34.

The respondents moved to quash the original alternative writ, and in their brief supporting such motion took the position that this case was controlled by the case of State, ex rel. Gillespie v. Carlton, 103 Fla. 810, 138 Sou. Rep. 612, which had then only recently been decided.

The respondents' motion to quash was granted, with leave to amend the writ.

Thereafter relator filed and served the present amended alternative writ in which it was alleged that moneys, raised under the authority of the Act creating the District by *ad valorem* taxes on the property of the District, and pledged to the payment of the bonds, had been transferred to and remained in the hands of the Board of Administration in an amount unknown to the relator, but in an amount within the knowledge of and known to the respondents; that it was the duty of the Board of Administration to pay to relator, as the owner of one-half of the defaulted bonds of the issue, a like proportion of such *ad valorem* tax moneys so held by it (but not contending that it was the duty of the Board of Administration to so pay to the relator any of the moneys held by it to the credit of the District from the additional sources granted or provided for by the Board

of Administration Act). The command of the amended alternative writ was in accordance with the allegations as to the duty of the Board in that respect.

It will thus be seen that the object of the amended alternative writ of mandamus which is now before the Court is to require the respondent, J. M. Lee, as Comptroller, and as Secretary of the State Board of Administration, to draw his warrant upon the respondent, W. V. Knott, State Treasurer, as County Treasurer *ex officio* of Indian River and Osceola Counties, against any sum in the possession, custody and control of the respondent, W. V. Knott, as such County Treasurer *ex officio,* derived from *ad valorem* taxes levied in accordance with the obligation of the bonds issued under Chapter 11127, Acts of 1925, as credited to the interest and sinking fund account of the Atlantic-Gulf Special Road and Bridge District of Indian River and Osceola Counties, in an amount equal to one-half of the said funds so held by the said County Treasurer *ex officio* and available for the payment of the outstanding bonds of which relator alleges himself to be the bearer, owner and holder of one-half of those which are unpaid.

Our conclusion is that funds derived from *ad valorem* taxes imposed on the taxable properties of the Atlantic-Gulf Special Road and Bridge District, under authority of Chapter 11127, Special Acts of 1925, Laws of Florida, may be reached by mandamus at the instance of a bondholder pursuant to the principles recently stated by this Court in the case of State, *ex rel.* Suwannee River Bridge Co. v. Sholtz, 114 Fla. 135, 154 Sou. Rep. 871.

Section 15 of Chapter 11127, Special Acts of 1925, reads as follows:

"Sec. 15. It shall be the duty of the Board out of the proceeds of the taxes levied and imposed by this Act and

out of any other moneys in the possession of said Board; to apply said moneys so far as may be necessary to pay the interest upon said bonds as the same becomes due and to provide and set aside a sinking fund for the payment of the interest of said bonds, and at the maturity of said bonds out of said moneys to pay the principal thereof. Said Board shall set apart and pay into such sinking fund annually the amount required by the resolution to be paid into said sinking fund annually the amount required by the resolution to be paid into said sinking fund during the year; and the sinking fund for the payment of the principal of said bonds shall not be appropriated or used for any other purpose than the payment of the principal of said bonds."

The sinking fund so provided for in the Act under which relator's bonds were issued is a part of his contract security. And the obligation to continue the maintenance of said sinking fund in substantial compliance with the purpose and intent of Section 15 of Chapter 11127, *supra,* must, under the applicable law in such a situation, be deemed to have devolved upon the State Board of Administration under Chapter 14486, Acts of 1929, as the successors to the trustees of Atlantic-Gulf Special Road and Bridge District in the management of the District funds.

A bond issue sinking fund is a vested asset dedicated irrevocably by contract to the specific purpose of retiring the bond obligations of which it is a contractual resource for payment. Such sinking fund is completely beyond the control of the obligor or depositor, and is wholly committed to the management of the trustees whom the law and the contract provides shall handle and disburse it. The bonds themselves are a *bnoa fide* liability until actually paid. So an arrangement in the form of a sinking fund does not constitute a retirement of the bonds if the bond trustees, or

·other officers placed in charge of the sinking fund, default ·or otherwise fail to make good their legal obligation to pay current interest on bonds, and retire the matured bonds, through the funds placed at their disposal for such purposes, in the form of a sinking fund set up under the terms ·of the law and contract by the terms of which the bonds were issued and sold.

Under the facts of the present case, Chapter 11127, Acts ·of 1925, entitles the relator, as the holder of *matured and defaulted* bonds issued and sold under that Act, to resort to the sinking fund of Atlantic-Gulf Special Road and Bridge District as a means of realizing payment of what is relator's due. The fact that such sinking fund has passed into the hands of the State Board of Administration, as successor to the trustees of the original bond issue provided for in the authorizing Act (said Chapter 11127) under which the relator's bonds were issued, does not alter, abrogate or impair relator's legal rights with respect to such sinking fund as may be actually in existence and available to satisfy relator's claim.

Under the terms of the amended alternative writ, relator has limited his claim to payment, and has demanded payment, only out of such interest and sinking funds of Atlantic-Gulf Special Road and Bridge District as were at the time this proceeding was brought, actually in the custody, possession and control of the respondent, W. F. Knott, as County Treasurer *ex officio,* to the credit of said Atlantic-Gulf Special Road and Bridge District. By the amended writ it is sought to have such sinking fund applied to the extent that it will permit the payment of relator's bonds and other bonds of equal dignity, on a pro-rated basis, upon surrender of the relator's bonds to the extent particular payment of same is made.

It is the legal duty of the State Board of Administration as successors in duty, to the bond trustees provided for under Chapter 11127, Acts of 1925, *supra,* to authorize and provide for payment to relator to be made on his bonds, insofar as the actual sinking fund on hand of the Atlantic-Gulf Special Road and Bridge District will permit. The fact that relator limits his claim to payment on a *pro rata* basis instead of to the extent of the whole fund, does not render his amended alternative writ of mandamus void.

An alternative writ of mandamus will not be quashed because its commands are less than the law and the allegations of the writ justify. On the other hand, a writ of mandamus, whose commands are too broad, is fundamentally defective, and will be quashed when that objection is called to the attention of the Court, because the rule is that a peremptory writ of mandamus can only be enforced as a whole.

Insofar as the statutory interest and sinking fund of Atlantic-Gulf Special Road and Bridge District provided for by Section 15 of Chapter 11127, Acts of 1925, is concerned, it was competent for the Legislature by Chapter 14486, Acts of 1929, to remove such fund from the management of the original trustees and place it in the hands of the State Board of Administration. But continued management of the fund is required by law to be carried out by the State Board of Administration and maintained by it for the discharge of the district's bonds according to the contractual obligation under which they were issued and sold.

The provisions of Chapter 11127, Acts of 1925, with reference to the creation and maintenance of such interest and sinking fund, offer guarantees to the district's creditors, which it would be contrary to good faith to impair

by the substitution of the State Board of Administration as new trustees with reference to such interest and sinking fund, without imposing on it with reference to such statutory interest and sinking fund, the same obligations and conditions that pertained to the fund in the hands of the original bond trustees.

After moneys are placed in a statutory interest and sinking fund of this character, regardless of the source from which they were derived, they become subject to all the terms and conditions of law under which the interest and sinking fund was created and provided to be maintained as part of the creditors' contract security. See Board of Liquidators v. Municipality No. 1, 6 La. Ann. 21.

It was the duty of the State Board of Administration to set up, and continue to maintain in its hands, the same kind of sinking fund for Atlantic-Gulf Special Road and Bridge District Bonds, as was provided for by Chapter 11127, Acts of 1925, since it must, insofar as statutory sinking funds are concerned, discharge the duties imposed by sinking fund statutes, with reference to trust funds required to be set aside for sinking fund purposes.

There is nothing in respondents' return to show that this duty thus imposed upon it, has been breached. Neither does it appear that the duty to calculate and set aside such sinking fund cannot now be performed as a preliminary measure toward complying with the command of relator's amended alternative writ. Relator's amended writ is limited to an effort to reach the sinking fund of Atlantic-Gulf Special Road and Bridge District. It does not undertake to apply to funds which are merely credited to the district as its proportionate share of revenues apportioned to it, but which have never become a part of the statutory interest and sinking fund in fact, or in contemplation of law.

Respondents' motion to quash the alternative writ is denied and a peremptory writ is awarded, the return notwithstanding.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.