DAVID SHOLTZ, J. M. LEE and W. V. KNOTT, as members of and constituting the State Board of Administration of the State of Florida, and W. V. KNOTT, as *ex-officio* Treasurer of the Counties of DeSoto, Highlands and Hardee, State of Florida, v. STATE, *ex rel.* RALPH M. WINTERS.

163 So. 710.

Opinion Filed October 19, 1935.

*Cary D. Landis,* Attorney General, and *Robert J. Pleus,* Assistant, for Plaintiffs in Error;

*Hope Strong,* of Winter Park and *William K. Whitfield,* of Tallahassee, for Defendant in Error.

BUFORD, J.—This case is before us now on motion to dismiss the writ of error upon the ground that no meritorious questions are presented, that the writ of error is frivolous and taken for delay. The briefs have been filed and, therefore, we have considered the merits of the case as presented in connection with the motion to dismiss.

The writ of error is from a peremptory writ of mandamus entered by the Circuit Court for Leon County, Florida,

commanding the respondents to pay nine bonds of Special Road & Bridge District No. 4 of DeSoto County, Florida, dated May 15, 1918, in the denomination of $1,000.00 each, numbered 125 to 133, inclusive, maturing May 15, 1933, and that the same be paid from funds in the hands of the Relators received for that purpose from the counties of DeSoto, Highlands and Hardee.

The record shows that the bonds were issued prior to the creation of Highlands and Hardee Counties from parts of DeSoto County and that the Special Road & Bridge District No. 4, upon the County being divided, was located part in DeSoto County, part in Highlands County and part in Hardee County.

The return sets up that the *ad valorem* tax moneys in the hands of the Board at the date of the service of the alternative writ were as follows:

> "DeSoto County ........................ $8,842.20
> "Hardee County ...................... 439.32
> "Highlands County ................... 439.79
>
> "Total ................ 9,721.31"

The return further states:

"And these respondents further allege that upon the creation of Highlands and of Hardee Counties as alleged in the numbered paragraph 2 of the said writ, it was then and there determined that of the obligations then outstanding of said Special Road and Bridge District Number 4, 68.21 per cent. thereof should be levied upon and collected from the territory of said Special Road and Bridge District remaining in DeSoto County; and 24.88 per cent. thereof from the territory embraced within Highlands County; and 6.91 per cent. thereof from the territory embraced within Hardee County."

The return then alleges that upon the basis of the apportionment the Counties should contribute to the payment of the bonds as follows:

"DeSoto County ........................ $6,138.90
"Highlands County .................... 2,239.20
"Hardee County .......................... 621.90

"Total ...................... $9,000.00"

So the contention is that if the respondents are required to do the thing commanded by the peremptory writ of mandamus it will result in, DeSoto County paying more than its proportionate share of the bonded indebtedness.

That the fund may be reached by mandamus is definitely set at rest by the opinions and judgments of this Court in the cases of State, *ex rel.* Davis, v. State Board of Administration, 115 Fla. 806, 156 Sou. 130 and State, *ex rel.* Orrell, v. Johnson, *et al.*, 109 Fla. 263, 147 Sou. 254. In the case of State, *ex rel.* Davis, v. State Board of Administration we said:

"Insofar as the statutory interest and sinking fund of Atlantic-Gulf Special Road and Bridge District provided for by Section 15 of Chapter 11127, Acts of 1925, is concerned, it was competent for the Legislature by Chapter 14486, Acts of 1929, to remove such fund from the management of the original trustees and place it in the hands of the State Board of Administration. But continued management of the fund is required by law to be carried out by the State Board of Administration and maintained by it for the discharge of the district's bonds according to the contractual obligation under which they were issued and sold.

The provisions of Chapter 11127, Acts of 1925, with reference to the creation and maintenance of such interest and

sinking fund, offer guarantees to the district's creditors, which it would be contrary to good faith to impair by the substitution of the State Board of Administration as new trustees with reference to such interest and sinking fund, without imposing on it with reference to such statutory interest and sinking fund, the same obligations and conditions that pertained to the fund in the hands of the original bond trustees.

"After moneys are placed in a statutory interest and sinking fund of this character, regardless of the source from which they were derived, they became subject to all the terms and conditions of law under which the interest and sinking fund was created and provided to be maintained as part of the creditors' contract security. See Board of Liquidators v. Municipality No. 1, 6 La. Ann. 21.

"It was the duty of the State Board of Administration to set up, and continue to maintain in its hands, the same kind of sinking fund for Atlantic-Gulf Special Road and Bridge District Bonds as was provided for by Chapter 11127, Acts of 1925, since it must, insofar as statutory sinking funds are concerned, discharge the duties imposed by sinking fund statutes, with reference to trust funds required to be set aside for sinking fund purposes."

This statement is pertinent to the present case because if the respondents could maintain the contention which they advance the contract for the payment of the bonds would be materially affected to the injury of the bondholder. When the bonds were issued the entire territory was in DeSoto County and the bonds pledged the taxing power to be applied to the District as a unit. For the Legislature thereafter to eanct legislation, the result of which would be to destroy the unit and to make the several parts of the unit responsible only for certain proportionate parts

of the fund would violate Section 1 of the Declaration of Rights of the State of Florida because it would invade property rights and would also violate Section 10, Article 1, of the Federal Constitution in that it would impair the obligation of the contract.

In other words, if the territory embraced in the district had remained entirely in DeSoto County, the bondholder would look to the fund produced by taxation on the property within the district as a unit and would be entitled to receive payment in full of his bonds if and when the unit had produced sufficient tax to pay the same. And the fact that the county was divided so that parts of the district lay in each of the three counties cannot be held to have changed his right to have his bonds paid from the fund derived from taxation levied and collected for that purpose.

It, therefore, follows that the judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL, and DAVIS, J. J., concur.

BROWN, J., dissents.

BROWN, J.—(dissenting).—The Attorney General's brief in behalf of plaintiffs in error contends that in the event the relator herein had sought a levy for the purpose of raising money to pay his bonds, he would have had to join all three counties, and that the levy ordered would have been upon the territory embraced within the said three counties respectively, or the basis of the proportionate part agreed upon at the time of the county division, and that it would be unjust to so extend the first-come first-served rule as to allow the relator to take all the funds raised by one of the counties far in excess of that county's proportionate share, thus allowing relator to accomplish indirectly what he could not do directly. I think this contention is sound.

The case of State, *ex rel.* Orrell, v. Johnson, cited in the majority opinion, to my way of thinking, supports the contentions of plaintiffs in error rather than those of defendant in error.