STATE, ex rel. FLORIDA NATIONAL BANK, at St. Petersburg, v. STATE BOARD OF ADMINISTRATION, consisting of David Sholtz, Governor, et al.; THE COUNTY OF PINELLAS; E. H. BECKETT, et al., as Board of County Comrs., and KARL B. O'QUINN, Clerk Board of County Comrs.

154 So. 876.
156 So. 15.
Opinions Filed May 4 and July 10, 1934.

*W. B. Dickenson,* for Relator;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* Assistants, and *John C. Blocker,* for Respondents.

### ON MOTION TO QUASH.

DAVIS, C. J.—The alternative writ of mandamus in this case was brought against the individual members as and constituting the Board of Administration of the State of Florida (Chapter 14486, Acts of 1929), the County of

Pinellas, State of Florida, the various members as and constituting the Board of County Commissioners of Pinellas County, and also against Karl B. O'Quinn, as Clerk of the Pinellas County Board of Commissioners.

The object of the suit is that the respondents, State Board of Administration, the County of Pinellas, the members of the Board of County Commissioners of Pinellas County, and the Clerk of the said board, shall, without undue delay, be required to pay each and every of the relator's interest coupons derived from certain bonds therefor issued by Special Road & Bridge District No. 13 of Pinellas County and held by relator, out of any funds in respondents' possession or in the possession of either of said respondents, provided for that purpose, upon presentment of said coupons by the relator for payment.

The defense interposed is a motion to quash the alternative writ. This motion we hold should be overruled for the following reasons:

The alternative writ alleges that there is in the Sinking Fund of Special Road & Bridge District No. 13, of Pinellas County, as credited to it by the State Board of Administration, already allocated to the payment of interest on the bonds whose coupons relator holds, more than the sum of $60,000.00. It furthermore alleges that relator's demand is for the payment of only $1,050.00 due him on his interest coupons, which $1,050.00 due relator, plus all other outstanding obligations that Special Road & Bridge District No. 13 owed and was due to pay as of the date of the issuance of the alternative writ amounted to a total of $46,890.00 which the $60,000.00 on hand in the sinking fund and allocated to payment of demands of relator and others similarly situated, exceeds by $14,000.00 the total amount

necessary to pay all current obligations due by the special road and bridge district respondent.

. In disposing of the motion to quash the alternative writ, it is elementary that the allegations of the writ must be considered as true for the purpose of ruling on the motion. By these allegations it affirmatively appears that the respondents are failing to make any distribution of available funds on hand notwithstanding such available funds were applicable to the discharge of relator's claim without undue prejudice to others equally entitled to participate in the distribution of the fund at the time the alternative writ was granted. Relator's demand, according to the allegations before us, is for the payment of $1,050.00 past due interest coupons. There is in the fund, according to other allegations of the writ, applicable and available to pay relator's coupons, a total of $60,000.00 in the interest and sinking fund credited to the account of Special Road and Bridge District No. 13, Pinellas County, the fiscal affairs of which are, under Chapter 14486, Acts of 1929, placed under the management and control of the State. Board of Administration, a respondent in this case.

It specifically alleged on this point as follows:

"Your petitioner would further respectfully show unto this Honorable Court, that the said Special Road and Bridge District now owes a total sum of $46,890.00 past due interest on bonds issued as aforesaid, and that the said Special Road and Bridge District No. 13 of Pinellas County, Florida, now has on hand and under the control of the said Board of Administration more than $60.000.00 available for the purpose of paying the past due interest on bonds of said Special Road and Bridge District No. 15 of Pinellas County, Florida; that, therefore, the said Special Road and Bridge District is amply able to pay and discharge the said

past due interest, but that the respondent, the Board of Administration, through its various members as aforesaid, and the Board of County Commissioners of Pinellas County, Florida, through its members as aforesaid, have failed, neglected and refused to pay to the relator the interest due as aforesaid, although demand has been formerly made upon each of the said Boards, respondents hereto, to pay and discharge the same. The relator would further respectfully show unto this Honorable Court that on September 22nd, 1933, the said Board of County Commissioners of Pinellas County, Florida, in session, adopted their budget for the fiscal year 1933-34, and at that time by their said budget as adopted, did allocate to the payment of interest on District bonds of Special Road and Bridge District No. 13, of Pinellas County, Florida, the gasoline tax revenues allocated by the said respondent, Board of Administration to Special Road and Bridge District No. 13 of Pinellas County, Florida, for the said fiscal year, and did by resolution, a certified copy of which is hereto attached and made a part hereof, levy an ad valorem tax upon all property situate, lying and being in Special Road and Bridge District No. 13 of Pinellas County, Florida, in the sum of three mills for the purpose of providing for interest and sinking fund upon bonds issued as hereinbefore stated."

Where interest coupons on outstanding special road and bridge district bonds are past due, and there are on hand and available for paying such interest coupons, sufficient applicable funds in the interest and sinking fund account of the obligor special road and bridge district, whose fiscal affairs are being administered by the State Board of Administration as provided for in Chapter 14486, Acts of 1929, *supra,* it is the clear legal duty of the State Board of Administration to disburse and make available the funds

on hand for the payment of the past due interest coupons, where the same can be done without prejudice to others having equally meritorious already due and payable claims which are required to be paid out of the same source of payment. This duty on the part of the State Board of Administration is one that is clearly and necessarily implied from the express terms and provisions of Chapter 14486, *supra,* which, in Section 15 of the Act, imposes the duty upon the board to remit applicable funds on hand to the specified places of payment of bonds and interest coupons, at least ten days in advance of maturity thereof.

There being a clear legal duty on the part of the State Board of Administration under Chapter 14486, Acts of 1929, to make advance provision for the disbursement and distribution of applicable and available funds on hand necessary to the discharge of interest coupons currently falling due and payable out of a fund on hand which appears to be sufficient to pay all equally entitled at the time a writ of mandamus is applied for, it follows that such duty may be enforced by mandamus upon the principles stated in State, *ex rel.* Orrell v. Johnson, 109 Fla. 263, 147 Sou. Rep. 254, wherein it was pointed out that the statutory duties of the State Board of Administration, both express and arising by necessary implication, are subject to enforcement by mandamus proceedings against the board. See also State, *ex rel.* Suwannee River Bridge Co. v. State Board of Administration, 114 Fla. 135, 158 Sou. Rep. 871, decided March 3, 1934, at the present term of this Court.

Here the duty sought to be coerced is one that is alleged to have arisen from the necessary implications of Chapter 14486, *supra,* prescribing the powers and duties of the State Board of Administration as the fiscal agent for Special Road and Bridge District No. 13 of Pinellas County. The

fund sought to be reached by the writ is alleged to have become by reason of a specific appropriation of it, one that is to all intents and purposes now as much a part of the interest and sinking fund of Special Road and Bridge District No. 13, as any moneys allocated to and placed into such interest and sinking fund can be, however raised or derived in the first instance. In this respect the present case is clearly distinguishable from the situation dealt with in State, *ex rel.* Gillespie v. Carlton, 103 Fla. 810, 138 Sou. Rep. 612, and should be so understood.

The distinction must always be observed between the prerogative writ of mandamus and the non-prerogative writ which bears the same name. In other words, there is a clear distinction between writs of mandamus which issue for prerogative purposes—that is, in general, purposes *publici juris*—writs of mandamus which issue for the vindication and enforcement of merely private rights. The latter are authorized merely because there appears to be no other efficient legal remedy to enforce the particular private right involved. Such distinction is to be looked for and is readily to be found in the functions each is employed to perform.

But, in cases where the writ is largely prerogative in character, there may be a private interest of the relator which meets with the public right of the State in the same litigation. This may be so because of the fact that the relator's private interest may be so bound up with the public interest in the same litigation, that it is essential to enforce the mere private right as an incident to the public one.

In Humphreys v. State, *ex rel.* Palm Beach Co., 108 Fla. 92, 145 Sou. Rep. 858, this Court recognized the distinction between a writ of mandamus whose purpose was wholly private, and one bound up with a question of public interest. In Newberry v. Harris, 114 Fla. 379, 153 Sou.

Rep. 807, opinion filed April 2, 1934, we denied the issuance in this Court of an alternative writ because the interest of relator was wholly private because the only public question involved had been recently decided by this Court in a recent case disposed of at the present term.

In State, *ex rel.* Hopkins v. County Court of Cooper County, 64 Mo. 170, the Supreme Court of Missouri observed the same distinction between writs of mandamus in the Supreme Court and in the lower courts, saying:

"That parties in ordinary cases were not compelled to come to this Court in search of such extraordinary remedies; that the trial courts were open to them; that suitors who have by appeal or writ of error brought up their causes to this Court and had them docketed, were of right entitled to precedence, whereof they should not be deprived in order to give place to those whose causes of action have but recently accrued, and who, if their application for these unusual writs and remedies were successful, would thereby gain an advantage and priority in point of time on the docket, which they could never hope to attain by the usual course of procedure.

These considerations have, in the crowded state of our docket, hitherto prevailed with us, and will continue to do so, until a case of far more than ordinary magnitude and importance, induces a departure from our general rule."

The distinction as a general proposition of law is also supported by 7 R. C. L., par. 112, page 1076, This Court, however, by reason of our peculiar constitutional provisions as to mandamus has adopted the construction that the jurisdiction of the Supreme Court and of the circuit court over original proceedings in mandamus of both kinds, is concurrent.

In the present case we construe the writ as having been sought for the primary purpose of having the purpose and intent of Chapter 14486, *supra,* carried out by requiring the prompt and orderly distribution of a fund on hand that should be distributed for the benefit of relator and others having a like interest in the fund under the statute by which its disbursement is controlled. The primary purpose is prerogative in character, although relator's private right to the payment of his own individually-held coupons is also involved.

Because of the right which the statute, as an enforceable State law, vests in relator to look to the State Board of Administration to execute the true intent and purpose of Chapter 14486, *supra,* by making a prompt, orderly, systematic and impartial distribution of moneys held by it for distribution as the fiscal agent for the several counties and several road and bridge districts of the State, relator is a proper party to apply for mandamus, and respondents, being all the parties who have or could have any jurisdiction or control, advisory or otherwise, over the distribution of the available funds on hand, are the proper parties respondent to such writ.

While the largely predominant prerogative character of the writ involved in this case makes the award of a peremptory writ not a matter of absolute right, but subject to the sound judicial discretion of this Court, the alternative writ sets up sufficient allegations of ultimate facts to show, in the absence of some justification or excuse contra, a right on relator's part to have an available fund distributed according to the purpose for which it was raised and is held under Chapter 14486, Acts of 1929; therefore, the motion to quash the alternative writ is denied with leave to file an answer within fifteen days.

Motion to quash alternative writ denied.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

DAVIS, C. J.—On May 4, 1934, respondent's motion to quash the alternative writ of mandamus in this case was denied. See foregoing opinion, reported in 154 Sou. Rep. 876. Subsequent thereto respondents filed a return in which they admitted the substantive allegations of the alternative writ of mandamus, but averred in avoidance thereof that they had refused to pay the interest on relator's bonds due July 1, 1933, because of the fact that on the 15th day of May, 1934, the Board of County Commissioners of Pinellas County, Florida, had, by appropriate resolution authorized the State Board of Administration to use all moneys belonging to Special Road and Bridge District No. 13 of Pinellas County for the purchase of bonds under the terms and provisions of Chapter 15891, Acts of 1933, popularly known as the "Kanner Bill."

It is the contention of the State Board of Administration that the adoption of the resolution referred to had the effect of withdrawing all funds derived from the gasoline tax from any liability with respect to the interest due, or to become due, upon the bonds issued by Special Road and Bridge District No. 13, and that the withdrawal of said funds on hand so reduces the available revenues for the payment of the amounts due to be disbursed on July 1, 1933, that it is not with the capability of the Board to make a distribution which will take care of all the amounts due to be paid on that date.*

---

*The return to the alternative writ of mandamus shows that on September 5, 1933, the Board of County Commissioners adopted its budget for the fiscal year 1933-1934, which included their budget for Special Road and Bridge District No. 13 of Pinellas County, as follows:

The Kanner Bill (Chapter 15891, *supra*), does not permit the State Board of Administration to use for the purchase of bonds, gasoline moneys which are already duly budgeted and appropriated to an interest or sinking fund account in order to provide for road and bridge indebtedness of a county or special road and bridge district of the State. On

"Budget 1933-1934
Special Road & Bridge District Number 13
Interest & Sinking Fund
Board of Administration
Delinquent Interest Requirements

| | | | |
|---|---|---|---|
| Interest due 7/1/33 | $40,890.00 | | |
| Cash on hand 6/30/33 | | $43,586.06 | |
| Anticipated Gas Tax to 9/30/33 | | 9,417.22 | |
| Tax Redemption 6/30/33 to 9/30/33 | | 5,300.00 | |
| | $40,890.00 | $58,103.28 | $17,413.28 |
| Surplus 9/30/33 | | | $17,413.28 |

No Millage required.

Current Interest Requirements

| | | | |
|---|---|---|---|
| Interest maturing 10/1/33 to 9/30/34 | $81,780.00 | | |
| Assessor's and Collector's Commissions | 1,500.00 | | |
| Anticipated Gas Tax fiscal year | | $29,347.50 | |
| Motor Transportation Tax | | 331.56 | |
| Interest on Investments | | 522.32 | |
| Anticipated Surplus from 1932-33 | | | |
| Requirements | | 17,413.28 | |
| | $83,280.00 | $47,614.66 | $35,665.34 |

2 Mills on $17,765,775.00 Valuation ............................. $35,531.54
Total Millage to be levied 8 Mills."

the contrary, the purpose of paragraph (d) of Amended Section 14 of Chapter 14486, Acts of 1929, as amended by said Chapter 15891, Acts of 1933, is to permit the State Board of Administration, by and with the approval of the County Commissioners of an affected county, to use any or all of the *un*appropriated moneys derived from the gasoline tax, as credited to the account of the county or road or road and bridge district, for the purpose of purchasing, at a price below the par value thereof, and at the lowest bid offered, any bond or bonds of such road district, road and bridge district, or county road bond issue to which such moneys have been credited in the hands of the State Board of Administration. This they may do to the extent that such gasoline moneys have not been appropriated as a substitute for the levy of ordinary debt service taxes to take care of the interest and sinking fund requirements of the outstanding bonds in the county.

To put the proposition another way, the Kanner Bill did not undertake to do that which would impair the obligation of contract of county road and bridge district bonds which would be the case if the Act authorized diversion of available gasoline moneys from the purposes specified in Chapter 14486, Acts of 1929, after such moneys had already been set aside and appropriated to reduce direct taxation.

The Kanner Bill merely gives to the county commissioners *the option* of making their ordinary ad valorem levies for bond requirements in due course if they so choose, in order to become entitled by resolution addressed to the State Board of Administration, to direct that the county's share of appropriated gasoline revenues be used for the purpose of purchasing depreciated bonds so as to reduce the county and district debt, leaving the ordinary debt requirements to

be provided for from time to time by the usual ad valorem tax levies for debt service as the law requires.

· In the present case it appears that the County Commissioners of Pinellas County had, for the fiscal year which is involved in this proceeding, already definitely and finally appropriated the anticipated revenues for that fiscal year to the purpose of paying the interest and sinking fund due to be currently paid upon the bonds of the series of which relator's bonds constitute a part.

· It was consequently beyond the power and province of the County Commissioners of Pinellas County, after having once made such appropriation for the purpose of reducing ordinary tax levies for bond requirements in the district, to thereafter invoke the provisions of the Kanner Bill for that same fiscal year, and by that means withdraw appropriated revenues from the interest and sinking fund account of Special Road and Bridge District No. 13 after such revenues had once become available to make the payments of the amounts due to be paid on July 1, 1933.

· In the present case, the relator has elected to so frame the command of his alternative writ as to limit its requirements to the payment to relator of only the interest coupons now past due which relator is entitled to have paid out of funds in possession of the State Board of Administration and appropriated for that purpose.

· It is no objection to the command of an alternative writ of mandamus that relator asks less to be done than the allegations of the writ justify the court in ordering. This is the converse of the proposition that a writ which asks for too much and which is therefore too broad, will be quashed for that reason.

The return of the respondents shows that there is on hand to the credit of Special Road and Bridge District No. 13

of Pinellas County an appropriated and available fund which relator is entitled to have applied to discharge of his interest coupons which became due on July 1, 1933, in common with others which became due at the same time. · The fact that relator has asked that his own coupons alone be paid, when he might have asked that all coupons of the series of which his are a part be paid by distribution of the moneys on hand, which are shown to be sufficient for the purpose of paying all as of July 1, 1933, is immaterial.

Under the terms of Chapter 14486, Acts of 1929, it was the clear legal duty of the State Board of Administration to disburse and make available the funds on hand for the payment of the interest coupons falling due on July 1, 1933, inasmuch as it is shown that the same were sufficient to make the disbursement due to be made on that date. Therefore, relator is simply invoking the provisions of the statute when he seeks by this proceeding to require that his own coupons, as a part of those which were due to be paid July 1, 1933, be now paid out of funds on hand available under the law for the purpose of making such payment. This is not an invocation of the so-called "first come first served" rule. On the contrary, it is a resort to mandamus for the purpose of having the provisions of Chapter 14486 carried out by the making to relator of a partial distribution of moneys which the statute required to be made July 1, 1933, in which distribution of the whole relator was particularly interested as a holder of certain specified coupons due to be paid on that date.

It follows that the respondents' return must be held insufficient and a peremptory writ of mandamus awarded pursuant to relator's motion therefor.

WHITFIELD, TERRELL and BUFORD, J. J., concur.