J. W. MEREDITH, L. F. ROGERS and JAMES G. MARTIN v. MORTGAGE & SECURITIES CORPORATION, a Florida Corporation, FRED P. CONE, as Governor of the State of Florida, J. M. LEE, as Comptroller of the State of Florida, and W. V. KNOTT, as State Treasurer of the State of Florida, as and Constituting the Board of Administration of the State of Florida, and W. V. KNOTT, as County Treasurer Ex-officio of Okeechobee County, Florida.

1 So. (2nd) 720
En Banc
Opinion Filed April 22, 1941

*Robert J. Pleus,* for Appellants;

*W. Terry Gibson, B. K. Roberts* and *James Messer, Jr.,* for Appellees.

BUFORD, J.—The appeal brings for review a final decree in an interpleader suit in which the court awarded the sum of $43,165.00 to Mortgage & Securities Corporation held by the State Board of Administration under an alternative writ of mandamus.

The controlling issue before the lower court was whether

Mortgage & Securities Corporation or J. W. Meredith, L. F. Rodgers and James G. Martin had first impounded the sum above named out of a total of $63,550.00 transferred from the "Kanner Bill Account" held by the State Board of Administration for the use and benefit of Okeechobee County.

The record shows that Okeechobee County had by resolution on September 10, 1938, invoked the provisions of Chapter 15891, Acts of 1933, known as the Kanner Act, thereby directing that all the gasoline tax money accruing to Okeechobee County in the hands of the State Board of Administration be used solely for the purpose of purchasing bonds under the provisions of that Act.

On October 3, 1938, at 11:02 A. M. the board of county commissioners adopted a resolution directing the transfer from the so-called Kanner Bill Account of the sum of $63,550.00 to the Interest and Sinking Fund of Okeechobee County county-wide bonds to be used indiscriminately for the payment of interest and principal of said bonds. In that resolution the board provided:

"Section 3. That the transfer herein authorized shall not be considered complete until the same has been approved and ordered made by the State Board of Administration and the transfer herein directed to be made has actually been accomplished, this resolution having been adopted at 11:02 A. M. on the 3rd day of October, 1938."

At 12:20 P. M. on the same day, October 3, an alternative writ of mandamus was served by Meredith in case No. 3714, in the Circuit Court of Leon County seeking to have impounded to be applied to payment of Okeechobee County county-wide bonds and coupons the sum of $63,550.00.

On October 4, 1938, the board of administration met but did not take action on the resolution, *supra,* and on that

date a telegram was sent from the board of county commissioners and received by the State Board of Administration advising that the resolution, *supra,* had been repealed and thereafter the repealing resolution was transmitted to the Board of Administration.

On December 17, 1938, at 9:00 A. M. the board of county commissioners passed a resolution similar to that adopted on October 3, 1938. Section 1 of that resolution provided:

"Section 1. That the State Board of Administration, Tallahassee, Florida, be, and it is hereby requested, instructed and directed to transfer $63,550.00 from the so-called Kanner Bill Account for issues of Okeechobee County, Florida, county-wide bonds, the interest and sinking funds of which are administered by the said State Board of Administration, to a consolidated interest and sinking fund account of the county-wide bond issues of said county, it being specifically understood that it is not the intention of this Board to rescind its prior action in adopting the terms of said so-called Kanner Bill, and that only such transfer shall be made as is herein specifically set forth, and further, that any remaining balance in the Kanner Bill account, except the sum hereinabove specified, shall continue to be held in the said Kanner Bill account subject to further instructions from this Board; and subsequent accruals from the State allocation of gasoline taxes shall continue to be credited to the so-called Kanner Bill account."

Sections 3 and 4 of the resolution provided:

"Section 3. That certified copy of this resolution shall be furnished to the said State Board of Administration, which certified copy shall constitute the instructions to the said State Board of Administration to do and perform all acts required of it to accomplish the purposes set forth in Section 1 hereof.

"Section 4. That the transfer herein authorized shall not be considered complete until the same has been approved and ordered made by the State Board of Administration and the transfer herein directed to be made has actually been accomplished; this resolution having been adopted at 9 o'clock A. M. on the 17th day of December, 1938."

On the same day, December 17, 1938, at 10:00 A. M., alternative writ of mandamus in favor of Meredith, *et al.,* in case No. 3754, Circuit Court of Leon County, was served upon the Board of Administration.

On December 19, 1938, the Board of Administration deferred action on the Resolution of October 17 and on December 21, 1938, at about 11:25 A. M. the Board of Administration approved the resolution of December 17 and ordered the transfer of the fund.

At 11:29 A. M. on December 21, 1938, Mortgage & Securities Corporation caused to be served on the State Board of Administration an alternative writ requiring the board to pay over to the relator in that case the sum of $63,320.00 in payment of securities held by the relator to which said fund was then alleged to be applicable. Thereafter the alternative writ was amended so as to reduce the amount required to be paid to $43,165.00.

Later two other writs were served in behalf of Mortgage & Securities Corporation, but were dismissed.

At 11:56 A. M. the clerical force in the office of the Board of Administration was advised of the action of the board and instructed to make the transfer on the books, but no book entry was ever made in regard thereto. On December 21, 1938, at 12:15 P. M., an alternative writ of mandamus in favor of Meredith, *et al.,* was served in case No. 3762, Circuit Court of Leon County. On December 22, 1938, the board of county commissioners passed a resolution repealing the resolution of December 17, 1938.

Confronted with this State of facts, the Board of Administration filed its bill of interpleader in the Circuit Court of Leon County, Florida, and on final consideration, the decree, *supra,* was entered. In that decree the sum of $20,385.00 was awarded to Meredith, *et al.* There is no contention that this was not a proper award if the fund of $63,550.00 was available for the payment of the securities involved. The controversy between Mortgage & Securities Corporation and Meredith is, and was, concerning the right of each to the sum of $43,165.00 which both parties claimed was impounded under their respective writs.

The contention of Meredith is that, (first) the entire sum of $63,550.00 was impounded on October 3 under this writ in case No. 3714, *supra.* That if it was not impounded under that writ it was impounded on the writ served at 10:00 A. M. on December 17, 1938, in case No. 3754 and that if it was not impounded under either of these writs, then it was not impounded under the writ in favor of Mortgage & Securities Corporation served on December 21, at 11:29 A. M., in case No. 3758, or under the writ in favor of Meredith, *et al.,* served at 12:15 P. M., December 21, 1938, because the provisions of the authorizing resolution of December 17, 1938, viz.: "that the transfer herein authorized shall not be considered complete until . . . the transfer herein directed to be made has actually been accomplished." In other words, the contention is (first) that when the board of county commissioners adopted its resolution on October 3, 1938, it thereby then and there transferred the sum of $63,550.00 to the bond and interest fund and that fund became immediately subject to writ of mandamus issued on the part of the security holder and that the provision of the resolution deferring the effective operation until it shall be approved by the State Board of Administration was without any force and effect and was beyond the

power of the board of county commissioners. That, there-
fore, the entire fund was impounded for the payment of
securities by Meredith, *et al.,* before the resolution was
rescinded by the board of county commissioners and was
thereby placed beyond control of the board of county
commissioners and that the attempted rescission of the
resolution which occurred on October 4 was without force
and effect. (Second) The same contention is made as
to the resolution of December 17, 1938, and the alternative
writ in favor of Meredith issued on that date and served
at 10:00 A. M. (Third) That if neither of these writs
effectuated the impounding of the fund, then the transfer
of the fund was never accomplished for the reason stated,
*supra,* and that neither party is entitled to an award from
the fund.

It is the contention of Mortgage & Securities Corporation
that the resolution of October 3, 1938, never became effective
because it was rescinded prior to any action thereon by
the State Board of Administration that it was within the
province of the Board of County Commissioners of Okee-
chobee County to make the resolution effective only upon
its approval by the State Board of Administration, that
the State Board of Administration did not by affirmative
action approve any resolution until December 21 at 11:25
A. M. and that when the resolution was so approved by the
State Board of Administration the fund of $63,550.00
immediately thereupon became a fund in the hands of the
State Board of Administration for the payment of the
county-wide securities of Okeechobee County; that Mort-
gage & Securities Corporation procured the issuance of its
alternative writ of mandamus after the State Board of
Administration had taken affirmative action, thereby making
the transfer resolution effective and before any other
security holder had procured the issuance of a writ and

that the writ so issued in behalf of Mortgage & Securities Corporation was served prior to the service of the writ procured and served by Meredith at 12:15 o'clock on the same day.

So, first we may say on authority of State *ex rel.* Suwannee River Bridge Co. v. Sholtz, 114 Fla. 135, 154 Sou. 871; State *ex rel.* Andrews v. Sholtz, 120 Fla. 423, 162 Sou. 865, that when the resolution of the Board of County Commissioners authorizing the transfer of the fund to the bond and interest account became effective it was subject to the "first come, first served" rule, and if and when it became impounded by an alternative writ of mandamus the fund cannot be withdrawn from the bond and interest fund until the determination of such mandamus suit. So we must determine when, if ever, the resolution of October 3, .1938, and the resolution of December 17, 1938, became effective to transfer the fund. Referring to Chapter 15891, Acts of 1933, known as the Kanner Act, which amended Section 14, Chapter 14486, Acts of 1929, we find that paragraph (g) of Section 14, as amended, is as follows:

"(g) *Resolutions adopted by County Commissioners* of the several counties under paragraph (d) for the purpose of approving the purchase of bonds by the State Board of Administration as by said paragraph authorized, *may contain such restrictions, conditions, and limitations as to price to be paid, and class, series or issue to be purchased* as the County Commissioners may see fit to approve, *and may be given for such period of time as in the judgment of the County Commissioners is deemed for the best interest of the County. Resolutions . so adopted may be rescinded by the County Commissioners, or thereafter amended or modified with like effect and authority as is given for the original adoption of such resolutions.*" (Emphasis supplied.)

We must hold that that part of each of the resolutions, *supra,* which provided that the transfer herein authorized shall not be considered complete until . . . and the transfer herein directed to be made has actually been accomplished, to mean that the resolution should not become effective until it had been approved by the affirmative order of the State Board of Administration. To give it any other meaning would be to hold that the thing authorized by the resolution and which could not be done without authority of the resolution should be done before the resolution became effective.

So we hold that when on December 21, 1938, the Board of Administration which included the Secretary and Treasurer of the State Board, the Treasurer being also the County Treasurer Ex-officio of Okeechobee County, approved the resolution of December 17, *supra,* and entered their order directing the funds to be transferred in accordance with the resolution, that such funds became then and there *ipso facto* transferred to the bond and interest fund of Okeechobee County in the hands of the State Board of Administration. The bookkeeping entries in that regard were mere matters of form to be carried out by employees of the board pursuant to authority of the board.

In the case of State *ex rel.* Suwannee River Bridge Co. v. Sholtz, *et al.,* 119 Fla. 701, 160 Sou. 872, we said:

"In neither of the amended returns of the respondents have they made it appear that on September 30, 1933, the date of the service of the alternative writ of mandamus in this case, the sum of $51,155.00 sought to be reached, was not, as charged in the alternative writ of mandamus (originally and as amended) an available and unappropriated tax fund of Sumter County then within the disposing power of the State Board of Administration. It is not shown that it has ever been duly credited to any interest

or sinking fund account of Sumter County bonds, nor has it been paid out in satisfaction of the bonds or coupons for the payment of which it was remitted to Central Hanover National Bank & Trust Company. It clearly appears that a reasonable time for paying same out or otherwise definitely disposing of it had long since elapsed when the alternative writ of mandamus in this case was served. Under such circumstances it cannot be held that the respondents, members of the State Board of Administration, nor the respondents, County Commissioners of Sumter County, are vested with the unlimited discretion to continue to hold for Sumter County's account in a state of suspended distribution, for an indefinite purpose, and for an indefinite period of time, the accumulated sum of $51,155.00 which having been held for disbursement for a long period of time and being not otherwise finally appropriated to a lawful object by the State Board of Administration, such as to the county's interest or sinking fund account, or actually paid out to creditors within a fair and reasonable time now constitutes a subjectable tax resource of the county capable of being seized on mandamus and applied to the satisfaction of the defaulted bonds and interest coupons of relators as the litigant who has first invoked a judicial process in the nature of an execution against it for the purpose of realizing payment of what is his due," which, in effect, was a definite holding that book entries in the accounts of the State Board of Administration were of no controlling effect upon the status of a fund. To the same effect was our holding in the case of Cone, *et al.*, v. State *ex rel.* Massey, 137 Fla. 417, 189 Sou. 44, 45 and 46.

Whether or not the resolution, *supra,* became effective and released the funds when each respectively was adopted by the Board of County Commissioners of Okeechobee County depends upon whether or not it was within the power of the

Board of County Commissioners to defer the effectiveness of the resolution until the happening of a certain named event, to-wit: the approval and order of approval of the State Board of Administration.

It is true that we have in numerous cases held that when a fund such as this has been appropriated by the Board of County Commissioners to the interest and sinking fund for the payment of bonds and interest thereon, it cannot thereafter be appropriated to some other fund. See State *ex rel.* Ga. Bond & Mortgage Co. v. Cone, *et al.,* 137 Fla. 412, 189 Sou. 47; State *ex rel.* Wall, *et al.,* v. Sholtz, *et al.,* 120 Fla. 423, 160 Sou. 877; State *ex rel.* Fla. National Bank, etc., v. State Board of Administration, 115 Fla. 753, 154 Sou. 876, and 156 Sou. 15; State *ex rel.* Andrews v. Sholtz, *supra.*

None of these cases, however, have touched the question of the power of the Board of County Commissioners to adopt a resolution appropriating to the county-wide bond and interest fund a part of a fund which had theretofore by resolution of the board been appropriated for use under the Kanner Act and to make such resolution effective only upon a contingency thereafter to occur. Certainly there is nothing in Chapter 14486, Acts of 1929, known as the Board of Administration Act, as amended by Chapter 15891, Acts of 1923, known as the Kanner Act, which precludes the Board of County Commissioners from pursuing the course which was pursued in the instant case! This was not a delegation of power to the State Board of Administration to adopt the resolution. It was merely the expression of the will of the Board of County Commissioners that the appropriation should be made and to take effect only from and after its aproval by the State Board of Administration. We think there is no difference in principle in the adoption of this condition and the adoption of a condition in the

resolution that it should take effect on a particular day in the future, or at a particular hour of a certain day in the future, or upon the Board of Administration rendering an account to the Board of County Commissioners showing the status of the fund in the hands of the Board of Administration.

It appears to us inasmuch as it has been repeatedly held, supra, that when a fund of this sort is appropriated by the board of county commissioners for the payment of county-wide bonds and interest thereon it cannot be thereafter appropriated to some other purpose (see cases cited, *supra*); that it is the exercise of reason and good judgment for a board of county commissioners, especially in a county as far removed from the State Capital as is Okeechobee, to move with caution when fixing the status of a fund of this sort and that it is neither unreasonable nor unlawful for such a board to so frame such an appropriating resolution as to get the advice and benefit of the experience and information available to the State Board of Administration before such resolution becomes effective beyond recall; that the power of the board of county commissioners is to make the appropriation but the statute giving them that power has not so circumscribed its exercise as to preclude the Board of County Commissioners from making the effectiveness of the resolution to be from and after the time of its approval by the State Board of Administration and the order of that Board recognizing the transfer.

It, therefore, follows that the resolution of October 3, *supra*, never became effective because it was rescinded before the Board of County Commissioners had lost control of it. The resolution of December 17 became effective as authority for the transfer of the sum of $63,550.00 from the Kanner Bill Account to the bond and interest account of Okeechobee County on its aproval and order of transfer

by the State Board of Administration on December 21 at about 11:25 A. M.

The first alternative writ of mandamus which was .effective to impound this fund was that writ which was issued after the action of the State Board of Administration, *supra,* and was served at about 11:29 o'clock A. M. on that day.

For the reasons stated, the decree is affirmed.

So ordered.

BROWN, C. J., TERRELL, CHAPMAN and ADAMS, J. J., concur.

WHITFIELD and THOMAS, J. J., not participating.